ESTEE LAUDER, INC., Plaintiff,

v.

UNITED STATES FOOD & DRUG
ADMINISTRATION, et al.,
Defendants.

Civ. A. No. 88–2741.

United States District Court,
District of Columbia.

June 16, 1989.

William R. Pendergast, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiff.

Heidi A. Garland, Dept. of Justice, Office of Consumer Litigation, Washington, D.C., Mary K. Pendergast, Office of the General Counsel, Dept. of Health & Human Services, Food and Drug Div., Rockville, Md., for defendants.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., Chief Judge:

Plaintiff Estee Lauder Inc. ("Lauder"), a cosmetic manufacturer, filed a complaint on September 23, 1988, seeking a declaration that a Food and Drug Administration ("FDA" or "Administration") employee's position regarding proposed labeling is unlawful, unreasonable, arbitrary, and capricious. In a September 2, 1988, letter, the employee had advised Lauder that its proposed labeling of certain skin creams would render the products "drugs," which could only be sold if Lauder secured FDA approval for them or could show that the products were generally recognized as safe and effective by qualified experts. Plaintiff also seeks an injunction barring the FDA from taking legal action against any of its products based upon that employee's interpretation of the Federal Food, Drug, and Cosmetic Act ("FDCA" or "Act"), 21 U.S.C. § 321(g)(1)(C). Claiming there are no genuine issues of material fact, plaintiff

filed a motion for summary judgment in November 1988.

Also in November 1988, the government moved to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. The government argues that the case is not ripe for adjudication, that Lauder has failed to exhaust its administrative remedies, and that this Court does not otherwise have jurisdiction to enjoin the FDA from instituting enforcement actions.

This Court heard oral argument on these motions on April 19, 1989. The legal memoranda, supporting exhibits, final arguments, and post-hearing memoranda have all been fully considered. For the reasons set forth below, the Court grants the government's motion to dismiss and denies plaintiff's motion for summary judgment.

## I. *BACKGROUND*

The Food and Drug Administration enforces the FDCA, which provides for different and more stringent regulation of drugs than of cosmetics. The FDA is authorized to take action against cosmetic manufacturers that make false and deceptive therapeutic claims about their products. The Administration and Lauder have engaged in lengthy discussions over certain Lauder cosmetics; they have disputed whether these products were being touted as having the effect of drugs and they have argued over the proper labeling of these goods. Given this context, it is appropriate to begin with a review of the statutory scheme of the laws regulating drugs and cosmetics.

## A. "DRUG" AND "COSMETIC" STATUTES

Because drugs and cosmetics are subject to different regulations regarding testing, approval, labeling, and advertisement, the products are distinctly described in the Federal Food, Drug, and Cosmetic Act. The FDCA defines "drugs" as:

[A]rticles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease ... and articles ...

intended to affect the structure or any function of the body....

21 U.S.C. § 321(g)(1). "Cosmetics," on the other hand, are defined as:

[A]rticles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance....

21 U.S.C. § 321(i)(1).

While both drugs and cosmetics are subject to the misbranding and adulteration provisions of the FDCA, 21 U.S.C. §§ 351, 361 (adulteration), 21 U.S.C. §§ 352, 362 (misbranding), drugs are subject to much stricter regulatory requirements. For example, it is well-established that drugs must comply with registration and labeling requirements. 21 U.S.C. §§ 360, 352(e), (f), (*o*), (p). Even more important, a drug cannot be sold until it is either specifically approved by the FDA or the manufacturer shows that the drug is generally recognized as safe and effective by qualified experts. 21 U.S.C. § 355; 21 U.S.C. § 321(p)(1). The FDA has no authority, however, to review cosmetics before they are marketed.

Some products, such as a skin cream, can be both a cosmetic and a drug under the FDCA. If a product is both, it must comply with the stricter requirements applicable to drugs. *United States v. An Article ... "Sudden Change"*, 409 F.2d 734, 739 (2d Cir.1969) (citations omitted). Courts have held that the decision as to whether a product is a drug depends on its "intended use", which can be determined from objective evidence such as the product's current and past containers, instructions, and advertisements. *Nutrilab v. Schweiker*, 713 F.2d 335 (7th Cir.1983); *National Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 334 (2d Cir.1977); *United States v. An Article ... "Line Away"* ..., 415 F.2d 369, 371–72 (3d Cir.1969); *"Sudden Change"*, 409 F.2d at 738–39.

## B. FACTUAL BACKGROUND

In early 1987, Daniel L. Michels, Director of the Office of Compliance for the Center

for Drugs and Biologics at the FDA, wrote to more than 20 cosmetic manufacturers and distributors. The Administration objected to particular claims [1] made by these companies in the marketing of certain anti-aging or anti-wrinkle creams. On April 17, 1987, Michels wrote to Lauder, opposing some of the claims made for seven Lauder skin creams.[2] Pltf.'s Ex. A; Defts.' Ex. 1. This "regulatory letter" reviewed the then-current labeling for the products, pointing out the claims that Michels believed were drug claims. Because these labels presented Lauder's products as affecting the structure or function of the body, they were currently being considered as drugs by the FDA. Michels requested that the company take prompt action to correct the violations. In addition, he warned Lauder that the Administration was prepared to invoke sanctions such as seizures or injunctions pursuant to provisions in the FDCA. Finally, he asked that Lauder advise the FDA of the firm's actions.

In response to Michels's regulatory letters, twelve companies wrote and later met with the FDA in May and July 1987. As a result of these communications, in September 1987, the coalition sent John M. Taylor, FDA's Associate Commissioner for Regulatory Affairs, a proposal which attempted to devise a framework for distinguishing between cosmetic and drug categories. Pltf.'s Ex. D; Defts.' Ex. 2. On November 18, 1987, Taylor advised the firms that he did not agree with their proposed mechanism for distinguishing between cosmetics and drugs. He was particularly concerned over the continued marketing of skin creams with anti-aging claims. The firms were requested to respond within 30 days regarding measures they would take to correct the objectionable claims identified in the regulatory letter.

After numerous letters, telephone conversations, and meetings, Lauder submitted a proposal to the FDA for revising its products' claims. This letter of December 18, 1987, was Lauder's first individual response, or its "initial response" to Michels's regulatory letter. Pltf.'s Ex. F; Defts.' Ex. 4. In a letter dated March 24, 1988, Taylor responded to Lauder, reiterating his views that the company's labels violated the FDCA. Pltf.'s Ex. H; Defts.' Ex. 5. Four days later, counsel for Lauder met with a different FDA official, asking for guidelines for industry assistance. Lauder followed up this meeting with a letter dated May 4, 1988, indicating that the company was eliminating older promotional materials. Pltf.'s Ex. I; Defts.' Ex. 6. A month later, an FDA official from the Office of Compliance, Ms. Roma Jeanne Krause, wrote back to Lauder, notifying the company that its response to the regulatory letter did not bring its products in compliance with the laws. Pltf.'s Ex. K; Defts.' Ex. 7. Ms. Krause stated that Lauder's responses were inadequate because the company had not dropped its claims that its products repaired the aging process of the skin, that it had added an over-the-counter drug ingredient to several products, and that it had not submitted any examples of revised labeling to FDA.

On July 12, 1988, Lauder submitted proposed revised labeling for the seven skin creams and lotions referred to in Michels's April 17, 1987 regulatory letter. Pltf.'s Ex. M; Defts.' Ex. 8. *See* note 2 *supra.* In a letter dated September 2, 1988, Michels commented on the proposed labels, advising Lauder that some of the revised labeling continued to be objectionable because claims were still being made for skin repair. Pltf.'s Ex. N; Defts.' Ex. 9. He gave specific objections to the claims made in the labeling of five products and re-

---

**1.** The government cites to Lauder's claim that its "Night Repair Cellular Recovery Complex" would "accelerate the natural repair of cells" and that the cream has "changed the science of skin care to skin repair." Defts.' Ex. 1 at 1. Lauder also promised that certain other products would "restructure and repair" the skin or would "work inside cell layers to counteract aging forces." Defts.' Ex. 1 at 4.

**2.** This letter dealt with the following products: Estee Lauder Night Repair Cellular Recovery Complex, Estee Lauder Eyzone Repair Gel, Estee Lauder Skin Perfecting Creme Firming Nourisher, Prescriptives Line Preventor, Perfect Skin Supplement, Estee Lauder Swiss Eye Creme, Estee Lauder Swiss Neck Creme, and Estee Lauder Age–Controlling Creme.

quested that these claims be removed. Finally, he asked that if Lauder was unwilling to make the changes identified, it so advise the FDA in 10 days. On September 13, 1988, Lauder stated that it would contact Michels "as soon as possible." Defts.' Ex. 10. Instead of contacting Michels, Lauder filed this lawsuit on September 23, 1988.

## II. GOVERNMENT'S MOTION TO DISMISS

### A. RIPENESS

■ The government seeks dismissal by asserting that the issues are not ripe for judicial review because Lauder's claims do not raise purely legal questions and because the FDA's challenged position does not constitute final agency action.

In deciding whether a controversy is ripe for review, a court must evaluate "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967). The "fitness" determination calls on the court to consider three factors: whether the issue raised is a purely legal one; whether immediate judicial review is calculated to avoid multiplicity of litigation; and whether the agency position is final and not likely to be reconsidered. *Independent Bankers Ass'n of America v. Smith*, 534 F.2d 921, 927–29 (D.C.Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976). The "hardship" inquiry requires the court to ask whether the agency's position has a " 'direct and immediate ... effect on the day-to-day business' of the complaining parties." *Federal Trade Commission v. Standard Oil Co.*, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980) (quoting *Abbott Laboratories*, 387 U.S. at 152, 87 S.Ct. at 1517).

Applying these principles to the dispute here, this Court concludes that ripeness and finality considerations prevent it from declaring that the FDA's position is unreasonable, arbitrary, and capricious. First, the issue of whether Lauder's skin creams are improperly making drug-like claims is not a purely legal question. The FDA objects to Lauder's use of words "repair" and "recovery" when the words were used to claim an effect on the aging process of the skin. It is not merely the use of the word "repair" by itself, but when taken in context, the FDA argues that Lauder tries to create an overall impression that the creams have a therapeutic effect on the consumer's skin. According to the Administration, Lauder's labels announce results that make the creams fall within the definition of drugs because they "affect the structure of the body." To decide whether a particular word like "repair" could be used on Lauder's products, it would be necessary to engage in an extensive fact-based determination as to exactly what the labeling and advertising for each product is now and has been in the past. This Court would also have to make a fact-based determination as to the "intended use" of each of the Lauder products. Such a factual review would deny the Administration the full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding. These considerations weigh strongly in favor of dismissal when the court is asked to rule on a factual question "particularly within the agency's bailiwick as opposed to a purely legal question within the primary competence of the courts." *Public Citizen Health Research v. FDA*, 740 F.2d 21, 31 (D.C.Cir.1984).

Even more significant, the FDA's position is not final and is likely to be reconsidered. Lauder argues that the Administration has taken final action, setting forth a six factor finality test which it believes has been met. *See* Pltf.'s Motion for Summary Judgment at 13–14 (Nov. 18, 1988). The Court disagrees with plaintiff's analysis and after applying the test, finds that the FDA's actions have not been sufficiently final. First, just because an agency has the authority to enforce regulations does not mean that any action it takes is final. Plaintiff's first factor, therefore, is flawed. Applying the second prong does not support Lauder's argument because as the Court has already stated, judicial review *would* interrupt an agency decision-making

process. *See Bell v. New Jersey,* 461 U.S. 773, 779, 103 S.Ct. 2187, 2191, 76 L.Ed.2d 312 (1983). As this Circuit has stated: "Review of tentative agency positions on substantive questions severely compromises the interests that ripeness and finality notions protect." *Public Citizen,* 740 F.2d at 31. This Court does not choose to resolve a substantive issue that is the subject of an ongoing agency proceeding. The third factor is not present either as it is evident that the FDA will develop the record regarding the use of the word "repair" and whether Lauder's skin creams qualify as drugs. As stated above, the likelihood of subsequent factual developments would aid judicial review. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 300–01, 99 S.Ct. 2301, 2310, 60 L.Ed.2d 895 (1979). Because there is reason to believe the FDA may modify the policies that Lauder is challenging, the action fails the fourth finality factor. *Hotel and Restaurant Employees Union v. Smith,* 846 F.2d 1499, 1508 (D.C.Cir.1988). From the numerous exchanges between the Administration and Lauder, it is clear that the FDA is open to discussing Lauder's proposed labeling. Plaintiff's contention that Michels's September 2, 1988, letter was a regulatory letter requiring immediate compliance with unequivocal language is unsupported by the text of the letter and its background. The letter states:

> If you are unwilling to make the changes identified in this letter, please advise us of that fact within 10 days. If you are unwilling to do so, the agency is prepared to take the regulatory measures discussed in our previous letters.

Pltf.'s Ex. N at 3; Defts.' Ex. 9 at 3. The letter requests Lauder to revise its labels, but in the event that the company chooses not to, Michels asks it to notify him. This indicates that Lauder has alternatives. The letter also says that the FDA is "prepared" to take regulatory action. This language is equivocal—there is no definite plan of attack on the part of the Administration. The Court concludes that Michels's letter was by its very nature informal and advisory. Therefore, the last two requirements of Lauder's test are not met.

*See Eagle–Picher Industries, Inc. v. EPA,* 759 F.2d 905, 917 (D.C.Cir.1985) (absence of "equivocal or tentative language" indicates that the published regulation was sufficiently final). The FDA's action fails the criteria set forth by plaintiff and due to its lack of finality, the Court will not review such an unripe claim. The ripeness doctrine is intended to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and [to] protect the agencies from judicial interference...." *Abbott Laboratories,* 387 U.S. at 148, 87 S.Ct. at 1515.

Lauder's hardship arguments fail to overcome the finality and fitness problems inherent in attempts to review tentative positions. When a regulated entity is caught in the dilemma of choosing between disadvantageous compliance and risking serious penalties,

> [T]he court must decide whether the benefits of review in a specific factual context are outweighed by the hardship that might be caused by delaying review until the standard is enforced against the regulated entity. *This evaluation applies, however, only when there is some established standard that can be reviewed by the court.*

*Public Citizen* at 31 n. 6 (citing 4 K. Davis, *Administrative Law Treatise* 369 (2d ed. 1983)) (emphasis added). Lauder is seeking a review of Michels's opinion that their proposed labels are inadequate. Since the FDA has not issued a formal ruling that the seven Lauder products qualify as drugs, nor has it established a standard for their labels, a different calculus of interests arises.

Because Lauder is seeking a pre-enforcement review of a projected agency position, the claimed hardship is no greater than any company confronted by an interpretation of a law it dislikes. The FDA, on the other hand, has a strong institutional interest in having this Court withhold its review. The Administration issues approximately 450 regulatory letters and numerous opinion letters each year. If the FDA were subject to suit each time it warned a company that

its product violated the Act, the Administration would be inhibited from performing a valuable public service—the issuing of informal advisory opinions. *See American Federation of Government Employees v. O'Connor*, 747 F.2d 748, 754 (D.C.Cir. 1984), *cert. denied*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985). This Court holds that general judicial review of the substantive merits of the FDA's tentative position is not an appropriate means to remedy the harm claimed by Lauder.

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ In seeking dismissal, the government argues that Lauder has not exhausted its administrative remedies. The doctrine of exhaustion is closely related to the ripeness requirement, both bearing on a claim's "fitness" for review. The exhaustion requirement stresses respect for agency prerogatives and principles of judicial economy by seeking to prevent "premature interruption of the administrative process." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1968). This doctrine serves four primary purposes: it ensures that persons do not flout established administrative processes and thereby advances Congress' intent in establishing the processes; it protects the autonomy of agency decisionmaking; it aids judicial review by permitting factual development in an agency proceeding; and it serves judicial economy by avoiding needless repetition of administrative and judicial factfinding and by perhaps avoiding the necessity of any judicial involvement if the parties successfully vindicate their claims before the agency. *Cutler v. Hayes*, 818 F.2d 879, 890–91 (D.C.Cir.1987).

The exhaustion requirement applies to Lauder's present request that the court decide the "drug" versus "cosmetic," as well as labeling issues in dispute between the company and the FDA. As stated above, whether Lauder's skin creams are products that more accurately qualify as drugs, rather than cosmetics, is a factual question demanding medical expertise which the FDA possesses and this Court lacks.

Moreover, the Court should not get involved in the ongoing administrative process when there are more appropriate procedures for Lauder to follow. The FDA employee, Michels, merely gave his informal opinion about some revisions to Lauder's proposed labeling. A subordinate's view such as this does not bind the FDA and can be challenged by Lauder. The regulations specifically provide for appeals to the supervisor:

**Internal agency review of decisions.**

(a) A decision of an FDA employee, other than the Commissioner, on a matter is subject to review by the employee's supervisor under the following circumstances:

.  .  .  .  .

(3) At the request of an interested person outside the agency.

21 C.F.R. § 10.75 (1988). Lauder could also have filed a "citizen petition" asking the FDA for a formal determination on its labeling. The FDA's regulations state that "[a]n interested person may petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action." 21 C.F.R. § 10.25(a) (1988). The procedure for submitting a citizen petition and the required form are described in detail in §§ 10.20 and 10.30 of the regulations. The Commissioner's determination on a citizen petition is final agency action subject to judicial review. For this Court to review the issues in the case at this point would "encourage disregard for the procedures Congress has established to resolve such questions and would undermine the autonomy of the administrative decisional process." *Public Citizen*, 740 F.2d at 29.

Plaintiff argues that any further action taken by them at the agency level would be futile. It is Lauder's position that Michels's September 2, 1988, letter was the FDA's final position. As reviewed above, the Administration says otherwise, strongly declaring that Michels's letter was an informal, advisory opinion. Lauder has not attempted to appeal Michels's position, nor has it filed a citizens petition. The Court

believes that Lauder has failed to demonstrate that resorting to these administrative procedures would be genuinely futile. Even when certain stages of an administrative process are inappropriate, the exhaustion doctrine nonetheless requires claimants to take advantage of any other stages that are available before they can seek a remedy in federal court. *Andrade v. Lauer*, 729 F.2d 1475, 1488 (D.C.Cir.1984). Because Lauder has not invoked the stages of the administrative process available to them, this Court will not upset the FDA's scheme for regulating drugs and cosmetics. The company will not be allowed to circumvent the administrative process in order to have its labeling dispute judicially resolved.

### III. *CONCLUSION*

Because the action is not ripe, plaintiff's complaint for declaratory and injunctive relief must be dismissed. This Court declines to conduct pre-enforcement review of Lauder's contentions that the FDA has acted unreasonably, arbitrarily and capriciously. "[R]eview of an agency's tentative position on a substantive issue in an ongoing agency proceeding is as a general matter antithetical to basic notions of the proper allocation of functions in our administrative state." *Public Citizen*, 740 F.2d at 32.

Accordingly, the government's motion to dismiss is granted.