**DIETARY SUPPLEMENT COALITION, INC., et al., Plaintiffs,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, David A. Kessler, M.D., Commissioner of Food and Drugs, and Food and Drug Administration, Defendants.**

**Civ. No. 91–126–RE.**

United States District Court, D. Oregon.

July 11, 1991.

Richard Botteri, Weiss, Jensen, Ellis & Botteri, Portland, Or., I. Scott Bass, Robert A. Sellers, Jr., Bass & Ullman, New York City, for plaintiffs.

Charles H. Turner, U.S. Atty., D. Or., Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., Darya Geetter, Atty., Office of Consumer Litigation, U.S. Dept. of Justice, Washington, D.C., for defendants.

## OPINION

REDDEN, Chief Judge.

### BACKGROUND

Plaintiffs filed this action for a declaratory judgment that their products which contain Co-enzyme Q10 (CoQ10) are "foods" and not "food additives," or, are "generally recognized as safe" within the meaning of the Food and Drug Act, 21 U.S.C. § 301 (the Act). Such a determination would exempt plaintiffs' products from premarket review by the Food and Drug Administration (FDA). Defendants filed a motion to dismiss alleging that since the FDA has not made a final determination regarding plaintiffs' CoQ10 products, there is no controversy for the court to decide, and plaintiffs' claim is not ripe for review. Further, defendants allege that plaintiffs have failed to exhaust their administrative remedies.

Plaintiff Dietary Supplement Coalition, Inc., is an incorporated trade association of "food and dietary supplement" manufacturers, whose purpose is to redress the FDA's alleged "improper attempts to eliminate safe dietary supplements from the market." Plaintiff Health Haus is a corporation that distributes products including those containing the ingredient CoQ10. Some of the member companies of plaintiff Dietary Supplement Coalition have also engaged in distributing CoQ10.

In 1989, the FDA initiated two proceedings to seize bottles of CoQ10 from Natural Organics, Inc., and Bio–Energy Nutrient, Inc.; member companies of plaintiff Dietary Supplement Coalition. The FDA stated that under the provisions of the Act, CoQ10 is an unsafe food additive because there is no FDA regulation prescribing the conditions under which it may be safely used. The FDA also issued regulatory letters concerning CoQ10 informing recipients that CoQ10 is an unapproved food additive

whose continued marketing subjects it and its sellers to enforcement action.

I grant defendants' motion to dismiss and dismiss this action.

## STANDARDS

Under Fed.R.Civ.P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). For the purpose of a motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir.1983).

## DISCUSSION

### 1. *Ripeness*

In deciding whether an issue is ripe for review, the courts must evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

### A. ISSUES FIT FOR JUDICIAL RESOLUTION

#### (1) *Food vs. Food Additive*

A claim is fit for decision if the issues raised are purely legal and do not require further factual development, and the challenged action is final. *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515–16. I find that plaintiffs' claims do not raise purely legal questions. Plaintiffs allege that CoQ10 is "normally sold in a capsule form without other nutrients," and that it "has enormous benefits for health by providing a rich source of nutrients...." Those allegations do not give this court a legal basis to determine that CoQ10 is a "food" and not a "food additive" within the meaning of the Act. The Ninth Circuit held:

> classification of a product as a ... food involves the same complex chemical and pharmacological considerations, and determination of technical and scientific questions, that led the Supreme Court to conclude that new drug decisions are best left to agency expertise. We therefore conclude that it is appropriate for a district court to decline reviewing anything less than a final administrative determination on the classification of a product....

*Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir.1983). I also rely on *Estee Lauder, Inc. v. FDA*, 727 F.Supp. 1, 4–5 (D.D.C.1989), where plaintiff sought a legal determination that its cosmetic products were not misbranded drugs under the Act. The court granted defendant's motion to dismiss holding:

> ripeness and finality considerations prevent [this court] from declaring that the FDA's position is unreasonable, arbitrary, and capricious. First the issue of whether Lauder's skin creams are improperly making drug-like claims is not purely a legal question.... This court would also have to make a fact-based determination as to the "intended use" of each of the Lauder products. Such a factual review would deny the [FDA] the full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding.... These considerations weigh strongly in favor of dismissal when the court is asked to rule on a factual question, particularly within the agency's bailiwick as opposed to a purely legal question within the primary competence of the courts.

*Id.* at 4 (citations omitted).

Therefore, determining whether plaintiffs' CoQ10 products are "foods," rather than "food additives," is not a purely legal question, and therefore is not an issue ripe for this court.

Plaintiffs respond that the determination is purely a legal one and "turns entirely on a reading of the legislative history behind the Act as well as an analysis of the relevant case law and a determination of whether a CoQ10 capsule can truthfully be classified as a substance used to flavor,

stabilize or sterilize food." Plaintiffs' Memo in Opposition, p. 13.

Plaintiffs contend that *Estee Lauder* can be distinguished because the court there found that judicial review would have interrupted an "ongoing" agency decision-making process that involved merely a "tentative" agency position. *Id.* at 4–5. However, the court *also* held that the issue of whether Lauder's skin creams are improperly making drug-like claims was not a purely legal question. The court found it would be necessary to engage in an extensive fact-based determination in order to resolve the dispute. "Such a factual review would deny the Administration the full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding." *Id.* at 4. The court held that these considerations "weigh strongly in favor of dismissal when the court is asked to rule on a factual question particularly within the agency's bailiwick as opposed to a purely legal question within the primary competence of the courts." *Id.*

Plaintiffs here also argue that the *Biotics* case "rested its entire decision" on the finding that the agency was not committed to an enforcement action. Plaintiffs' Memo in Opposition, p. 15. However, *Biotics* did not address the existence of any factual dispute regarding the classification of a product by the FDA. *Biotics* focused only on whether there had been final agency action, and after concluding there had *not* been, did not reach the issue of whether the FDA had properly classified the product.

Here, defendants contend that a factual issue exists as to the proper classification of the food or food additive that should not be resolved by the courts. I agree that a factual issue does exist as to whether plaintiffs' product is properly classified as a food or food additive and that that issue is properly resolved by the agency, not the courts. As in *Estee Lauder*, this court would be put in the position of having to make a factual determination in an area where the FDA holds the expertise and the courts do not. In the cases relied on by plaintiffs, the courts state that the parties agree that there is no factual dispute about whether the proposed classification or rule is purely a legal question. Here, there is clearly a dispute by defendants, who argue that the classification is *not* a legal question, but one of factual determination.

### (2) *Issue Ripe for Judicial Review*

■ Defendants also argue that this issue is not fit for judicial decision because there has been no final agency action. "In interpreting the finality requirement, a court looks to whether the agency action represents the final administrative work to insure that judicial review will not interfere with the agency's decision-making process." *Winter v. Cal. Medical Review,* 900 F.2d 1322, 1324–25 (9th Cir.1990). Defendants assert that the FDA's actions to enforce the Act, the issuance of regulatory letters and the two seizures of CoQ10, do not constitute final agency action. *See Biotics,* 710 F.2d at 1377 ("the type of informal letter issued by the FDA ... does not constitute the kind of formal or final agency action the Supreme Court had in mind...."); and *Estee Lauder,* 727 F.Supp. at 4–5 ("by its very nature the [FDA regulatory letter was] informal and advisory," and did not constitute final agency action).

Defendants assert that the seizures also do not represent final agency action. *Schering v. Heckler,* 779 F.2d 683 (D.C.Cir. 1985). In *Schering,* the FDA instituted a seizure action against a new animal drug (for chicks), secured a default judgment, and destroyed a quantity of the new drug. The court held that these actions "do not constitute final agency action...." *Id.* at 686 n. 18.

Plaintiffs argue that seizure by the FDA *does* constitute final agency action making the issue ripe for review by a court. Plaintiffs rely on *Ciba–Geigy Corp. v. U.S. Environmental Protection Agency,* 801 F.2d 430, 436 (D.C.Cir.1986). *Ciba–Geigy* held that a letter sent by the EPA which detailed the agency's position regarding the procedures required for labeling changes on pesticide products was sufficiently final and ripe for review even before enforcement of that agency position. *Id.* at 434.

Further, "courts confronted with close questions of ripeness are appropriately guided by the presumption of reviewability, especially when the affected person is confronted with the dilemma of choosing between disadvantageous compliance or risking imposition of serious penalties." *Id.*

In reaching its decision, *Ciba–Geigy* relied on *Abbott Laboratories'* instruction to apply the finality requirement in a "flexible" and "pragmatic" way. *Abbott Laboratories,* 387 U.S. at 149–50, 87 S.Ct. at 1515–16. In particular, a court looks to whether the agency's position is "definitive" and whether it has a "direct and immediate ... effect on the day-to-day business" of the parties challenging the action. *FTC v. Standard Oil Co.,* 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980). *Ciba–Geigy* held:

> these indicia of finality are ordinarily controlling because they are highly probative of whether the agency's position is *merely tentative,* or on the other hand, *whether the agency views its deliberative process as sufficiently final to demand compliance with its announced position. The interest in postponing review is powerful when the agency position is tentative.* ... Once the agency publicly articulates an unequivocal position, however, and expects regulated entities to alter their primary conduct to conform to that position, the agency has voluntarily relinquished the benefit of postponed judicial review.

*Id.* at 436 (emphasis added).

However, the distinguishing factor between the case at bar, and *Ciba–Geigy,* is that the latter case presented the "narrow legal question" as to what procedures EPA was obliged to follow before requiring a labeling change. The court noted that that legal issue "is entirely independent of and separable from the largely factual question whether [the chemical at issue] poses substantial danger of groundwater contamination." *Id.* at 435. Contrary to our case, the plaintiffs' complaint in *Ciba–Geigy* did not challenge the merits of EPA's labeling requirements or the sufficiency of EPA's case for misbranding. *Id.*

Defendants admit that there seems to be a split of authority on whether FDA seizures constitute final agency action. However, defendants distinguish the cases where a the courts approved a seizure as final agency action because the FDA had already considered and refused to approve an application from plaintiff Premo to market the drug at issue. *See Premo Pharmaceutical Laboratories, Inc. v. United States,* 629 F.2d 795, 799 (2d Cir.1980). When the FDA threatened the seizure of plaintiff Natick's food packaging material, the agency had already published a regulation banning that food packaging material as violative of the FDC Act. *See Natick Paperboard Corp. v. Weinberger,* 498 F.2d 125, 126 (1st Cir.1974). In both of these cases, plaintiffs had already used their administrative remedies.

Defendants argue both the refusal to approve Premo's drug, and the issuance of the regulation prohibiting Natick's food packaging, were final FDA actions reviewable in the courts of appeals. The FDA's position on the products at issue in *Premo* and *Natick Paperboard* was definitive at the time the seizures of those products were filed. Therefore, the seizure of the products in the case at bar were more like the seizures in *Schering,* where the seizures were neither based upon, nor do they establish, final agency action.

Defendants also argue that a claimant can contest a seizure action under the Act at 21 U.S.C. § 334. Further, Natural Organics, Inc. is currently litigating the seizure action initiated against its CoQ10 products in a New York District Court. Defendants argue that that forum is the proper one within which to raise claims regarding the status of CoQ10. In the seizure of CoQ10 from Bio–Energy Nutrient, Inc., that company permitted the product to be condemned by default. [Cv. No. 89–M1095 (D.Colo. Aug. 28, 1989)].

### 2. *Hardship to the Parties of Withholding Judicial Review*

Defendants contend that plaintiffs have not shown that they would suffer hardship "sufficiently direct and immediate as to

render the issue appropriate for judicial review at this stage." *Abbott Laboratories,* 387 U.S. at 152, 87 S.Ct. at 1517. The hardship must entail more than "possible financial loss." *Cal. Dept. of Educ. v. Bennett,* 833 F.2d 827, 833–34 (9th Cir. 1987).

Defendants contend that the hardship plaintiffs allege is speculative and hypothetical. *See* Complaint, para. 20 ("there may be additional seizures and/or injunction actions against members of the DSC or Health Haus should these companies continue to sell CoQ10 in interstate commerce"). *Estee Lauder* stated, "because [plaintiffs are] seeking a pre-enforcement review of a projected agency position, the claimed hardship is no greater than any company confronted by an interpretation of a law it dislikes." *Id.,* 727 F.Supp. at 5.

Plaintiffs contend that they are subject to direct and immediate hardship. Either they must comply with FDA's "unsafe food additive" interpretation with respect to their CoQ10 products; or follow their present course and "risk additional seizure actions and/or criminal sanctions." Plaintiffs' Memo in Opposition, p. 24.

Based on the allegations of harm in plaintiffs' complaint ("there may be additional seizures and/or injunction actions against members of the DSC or Health Haus should these companies continue to sell CoQ10 in interstate commerce"), I find that it is to speculative to warrant judicial intervention. As *Estee Lauder* noted, "because [plaintiffs are] seeking a pre-enforcement review of a projected agency position, the claimed hardship is no greater than any company confronted by an interpretation of a law it dislikes." *Id.* at 5.

### 3. *Failure to Exhaust Administrative Remedies*

The primary purpose of the exhaustion requirement "is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Sierra Club v. Union Oil Co. of California,* 813 F.2d 1480, 1486 (9th Cir. 1987).

Defendants contend that plaintiffs can exhaust their administrative remedies by filing a "citizen petition" asking the FDA for formal determination of CoQ10's status as a food or food additive. 21 C.F.R. § 10.-25(a) (1990). The plaintiffs do not deny this. The Commissioner's decision on such a petition is generally due within 180 days, 120 C.F.R. § 10.30(e)(2). The decision is reviewable in federal court as final agency action, 21 C.F.R. § 10.45(d), after an appropriate administrative record is developed, 21 C.F.R. § 10.30(i).

Additionally, plaintiffs can petition the FDA to conduct a proceeding to determine that their products are "generally recognized as safe" (GRAS). 21 C.F.R. §§ 170.-35, 170.38. Plaintiffs also have failed to avail themselves of the FDA's internal process for obtaining review of the position expressed in a regulatory letter. 21 C.F.R. § 10.75. Defendants claim that plaintiffs have neither availed themselves of these administrative remedies nor have they alleged, or established, that it would be futile to address their concerns to the FDA. *See Biotics,* 710 F.2d at 1378 ("nothing in the record to indicate that a citizen's petition to the Commissioner would [be] ineffective or futile"). I agree.

### CONCLUSION

Defendants' motion to dismiss is granted. I find that the issues presented are not fit for judicial resolution because: (1) the issues raised are not purely legal and require further factual development; (2) the challenged action is not final; and (3) plaintiffs have not exhausted their administrative remedies. Further, plaintiffs' Motion to Extend the Discovery Schedule is denied as moot.