Wilkinson v. Chao                    CV-03-046-JD  11/24/03  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Scott S. Wilkinson
and James Mitchell

    v.                                   Civil No. 03-46-JD
                                   Opinion No. 2003 DNH 199

Elaine Chao[1]


O R D E R


    Scott S. Wilkinson and James Mitchell, proceeding pro se, have sued United States Secretary of Labor Elaine Chao under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to compel the disclosure of certain documents concerning the denial of overtime pay to Mitchell, an employee of the Labor Department's Occupational Safety and Health Administration branch ("OSHA"). OSHA has resisted the disclosure of the documents on the grounds that they are protected by the deliberative process privilege. See 5 U.S.C. § 552(b)(5). On the basis of this privilege, Secretary Chao moves to dismiss the complaint for lack of subject matter jurisdiction or for summary judgment on the plaintiffs' claim (document no. 8). The plaintiffs object and cross-move for summary judgment (document nos. 20-21). Secretary Chao objects

_____

[1]This action is brought against the defendant in her official capacity as Secretary, United States Department of Labor.

to the plaintiffs' cross-motion (document no. 23).

<u>Standard of Review</u>

Secretary Chao has moved to dismiss this action on the ground that this court lacks subject matter jurisdiction because OSHA has not unlawfully withheld records. <u>See</u> <u>Kissinger v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 150 (1980); <u>Shaftmaster Fishing Co v. United States</u>, 814 F. Supp. 182, 184 (D.N.H. 1993). Ordinarily, where evidentiary materials are submitted on a motion to dismiss for lack of subject matter jurisdiction, the court is permitted to weigh that evidence to discern whether a factual predicate for jurisdiction exists. <u>O'Toole v. Arlington Trust Co.</u>, 681 F.2d 94, 98 (1st Cir. 1982).

Where the jurisdictional issues raised by a motion to dismiss are intertwined with the merits of the plaintiff's claim, however, a court must treat the Rule 12(b)(1) motion as a motion for summary judgment. <u>See</u> <u>Gonzalez v. United States</u>, 284 F.3d 281, 287 (1st Cir. 2002); <u>McLellan Highway Corp. v. United States</u>, 95 F. Supp. 2d 1, 5-6 (D. Mass. 2000). Here, because FOIA serves as the source of both this court's subject matter jurisdiction and the plaintiffs' cause of action, the jurisdictional inquiry is intertwined with the merits of their claim. <u>See</u> <u>United States ex rel. Fine v. M-K Ferguson Co.</u>, 99 F.3d 1538, 1543 (10th Cir. 1996); <u>Baizer v. Dep't of Air Force</u>,

2

887 F. Supp. 225, 226-27 (N.D. Cal. 1995). Accordingly, the court must analyze Secretary Chao's motion under Rule 56.

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In performing this analysis, the court must view the entire record in the light most favorable to the non-movant, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). Still, "[o]n issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Id., 950 F.2d at 822; see also Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001). Where, as here, both sides have moved for summary judgment, the court applies the foregoing analysis to each motion in turn. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

Background

Mitchell works as an industrial hygienist in OSHA's Concord, New Hampshire, area office. Pursuant to the collective bargaining agreement between his union and the Department of Labor, Mitchell filed a grievance with OSHA's regional administrator on October 8, 1999, asserting that OSHA had violated the agreement and the Fair Labor Standards Act ("FLSA") by failing to pay him at the overtime rate for fourteen and one-half hours of work which he performed between September 22, 1999, and October 6, 1999. The grievance was denied on October 21, 1999, by OSHA's regional administrator. Within sixty days of that date, Mitchell requested arbitration of his claim as provided by the agreement.[2]

Wilkinson, a federal wage and hour investigator assigned to work as a union representative, served as Mitchell's union advocate at the arbitration proceedings, which began on November 14, 2001, and concluded on September 14, 2002, after a number of lengthy continuances. The issue in the arbitration was whether Mitchell did not qualify for overtime pay under the FLSA because he was working in a "professional capacity" as defined by 29 U.S.C. § 213(a)(1) and its implementing regulations. The

---

[2]The specific date on which Mitchell requested arbitration does not appear in the record.

4

arbitrator denied Mitchell's grievance in a written decision issued on October 10, 2001.

While the arbitration was pending, OSHA asked its program manager and senior technical expert concerning position classification and position management, Thomas Wayne Ponton, to review the duties Mitchell performed during the period for which he claimed unpaid overtime. In his declaration submitted in support of Secretary Chao's motion for summary judgment, Ponton describes his assignment as a "final OSHA determination regarding whether certain work performed . . . by . . . Mitchell was 'professional' work, and thus exempt from the [FLSA] overtime provisions . . . ." First Ponton Decl. ¶ 4. Secretary Chao has also submitted another declaration from Ponton, executed on October 15, 2003 and made in opposition to the plaintiffs' summary judgment motion. In it, Ponton states

> I was aware at the time I conducted the audit that Mr. Mitchell's request for overtime had been denied, that he had grieved that denial, and that there was a pending arbitration on the grievance. However, I was reviewing the issue to make a final determination for [OSHA], which I did.

Second Ponton Decl. ¶ 5.

In undertaking his assignment, Ponton created one of the documents at issue in this litigation, a January 23, 2002, e-mail message to David May, the area director of OSHA's Concord office.

5

Ponton describes the e-mail as "a preliminary list of general questions" generated to obtain May's "interpretation and opinion" of the nature of Mitchell's work.  First Ponton Decl. ¶ 6.  Ponton also explains that he intended to use May's response as part of the "analysis and evaluation process in determining the FLSA status of the work performed . . . ."  Id. ¶ 7.

In response to his e-mail, Ponton received the "19 pages of documentation" which constitute the second document at issue in this case.  Id. ¶ 10.  Miriam McD. Miller, an attorney at the Department of Labor with knowledge of this document, describes it as an "internal memorandum of case studies" prepared by May and George Kilens, the team leader for OSHA's Concord office who supervised Mitchell.  Miller Decl. ¶ 4.  Both May and Kilens relate that they reviewed files of certain inspections conducted by Mitchell and "prepared written material about the type of work performed."  May Decl. ¶ 7; Kilens Decl. ¶ 6.

According to both May and Kilens, "[t]he written material was not simply a recitation of the facts" of Mitchell's role in those inspections, but reflected their opinions about "the degree of discretion and judgment" associated with his work on them.  May Decl. ¶ 8; Kilens Decl. ¶ 7.  Kilens explains that the written material he provided to Ponton "did not reach any conclusions about the FLSA . . . .  it was not a final decision."

6

Kilens Decl. ¶ 9.  May does not specifically make such a claim, although he describes the information he provided as "preliminary in nature."  May Decl. ¶ 9.  Both May and Kilens state that Ponton followed up on the document with additional questions.

For his part, Ponton avers that the information contained in the document "was used primarily in an advisory manner in which [he] considered, accepted, discarded and adapted the information in reaching [his] final conclusions."  First Ponton Decl. ¶ 10.  Ponton also relates that "the opinions and assessments contained in that written material [received from May and Kilens] played a minuscule role in reaching [his] final determination."  Id.

On April 26, 2002, Ponton generated a document entitled "Fair Labor Standards Act Determination" in which he stated that he "was asked to review . . . Mitchell's position in order to determine the . . . exemption status of work performed during a specified period of time."  The document expressed Ponton's conclusion that "it is determined that Mr. Mitchell's work is exempt under the professional exemption criteria."  Ponton describes this document as "the final FLSA determination . . . ."  First Ponton Decl. ¶ 9.  Miller describes it as "the final audit report . . . ."  Miller Decl. ¶ 7.  This document was previously given to Wilkinson and therefore is not directly at issue here.

Peter Beil, the regional labor relations officer who

7

represented the Department of Labor in the arbitration, describes the events leading up to Ponton's assignment as follows:

> As part of management's case, I had always reserved the right to have a Human Resources Specialist testify. At some point, an arrangement was made to have Thomas Ponton, a Human Relations Specialist for OSHA, conduct an audit of the specific work performed by Mr. Mitchell that was at issue in the case.

Beil Decl. ¶ 5. Beil relates that he discussed Ponton's "forthcoming audit" with Wilkinson, telling him that if "Ponton decided, after the audit, that the work at issue was non-exempt, [Beil] would likely settle the case for OSHA." Id. ¶ 6. Beil also suggested to Wilkinson that the grievance should be withdrawn "if the decision was to the contrary . . . ." Id.

After the "audit was completed" and Ponton "issued his decision," however, Wilkinson "indicated . . . that withdrawal was not likely to occur." Id. ¶ 7. "As a result," according to Beil, he requested that Ponton be allowed to testify on OSHA's behalf at the arbitration. Id. ¶ 8. Beil states that Wilkinson acquiesced, but requested that Ponton "disclose his notes of his interviews with Mr. Mitchell and management officials." Id. Beil explains that he did not understand the request to include "information gathered in anticipation of interviewing the employee and management." Id. Beil "agreed to provide such interview notes or memory joggers" which existed. Id.

8

Wilkinson has a different recollection of how Ponton came to testify as a witness at the arbitration. Wilkinson describes an April 19, 2002, teleconference with the arbitrator and Beil which "resulted in Mr. Beil substituting" Ponton for another OSHA employee who appeared on the witness list Biel had previously submitted to the arbitrator. Wilkinson Decl. ¶ 8. According to Wilkinson, Beil "agreed to share all of Mr. Ponton's work papers, including interview statements, that were related to his as yet uncompleted 'FLSA Exemption Determination' of Mr. Mitchell." Id.

Beil later informed Wilkinson, however, that Ponton had discarded the notes of his interviews after incorporating their substance into the April 26, 2002 document.[3] Ponton subsequently testified at the arbitration. With respect to this testimony, he relates merely that "at one point, [he] was asked to testify as to the determination [he] had made" regarding Mitchell's eligibility for overtime. Second Ponton Decl. ¶ 6.

On May 28, 2002, Wilkinson requested that Biel produce "all related interviews taken by Mr. Ponton, as well as notes, work

[3]Ponton states that Beil "at some point" asked him for his "notes," which Ponton understood to mean his notes from his interviews with management and Mitchell, rather than "copies of every document [Ponton] had used to develop [his] opinion and decision, or that [he] had used to get ready for the interviews." Second Ponton Decl. ¶ 6. Ponton explained that he had discarded the notes after incorporating their substance into his report, as he normally does.

9

papers, . . . and correspondence in any related files . . . " by way of discovery in the arbitration. Biel Decl. ¶ 10. In his written response, Beil denied that he had ever promised to produce "any materials that may exist in Mr. Ponton's working files" and refused to turn over the information because Wilkinson had "failed to establish a particularized need" for it.[4]

Wilkinson subsequently wrote to the Department of Labor on June 7, 2002, requesting "the entire file" regarding Ponton's April 26, 2002, report under FOIA. The Department responded in a July 8, 2002, letter enclosing certain materials, primarily written OSHA regulations and standards. The letter also stated that "[d]ocuments that are internal to management may be denied pursuant to Exemption 5 of FOIA," 5 U.S.C. § 552(b)(5), but did not identify any such documents which were responsive to Wilkinson's request or even explicitly state that they existed.

Wilkinson later submitted a written appeal to the Department

_____

[4]Under the Federal Service Labor-Management Relations statute, a federal employer must provide a union representative upon request with data "which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." 5 U.S.C. § 7114(b)(4)(B). Courts have interpreted this provision to require a union to show a "particularized need" for the data before the employer must produce it. See, e.g., Am. Federation of Gov't Employees Local 2343 v. FLRA, 144 F.3d 85, 87 (D.C. Cir. 1998). OSHA's decision that Wilkinson failed to make this showing with respect to the documents in question has not been challenged in this lawsuit.

10

of Labor, arguing that the he was entitled to an index of the documents being withheld, and that, in any event, exemption 5 did not apply because Ponton's report was prepared after OSHA had already decided that Mitchell was not entitled to overtime pay. The Department denied this appeal in a letter of September 30, 2002, which identified the documents being withheld as Ponton's January 23, 2002, e-mail to May and "19 pages of case summaries prepared by Mr. May for Mr. Ponton." This lawsuit followed.

Discussion

"The policy underlying [FOIA] . . . 'is . . . one of broad disclosure, and the government must supply any information requested by an individual unless it determines that a specific exemption, narrowly construed, applies.'" Maine v. Dep't of Interior, 298 F.3d 60, 65 (1st Cir. 2002) (quoting Church of Scientology Int'l v. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994)). Secretary Chao moves for summary judgment on the ground that the documents withheld are exempt from disclosure under FOIA by virtue of one its exemptions, 5 U.S.C. § 552(b)(5). This provision, often referred to as "exemption 5," allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

Exemption 5 shields documents normally immune from civil discovery, including those protected by the attorney-client, attorney work product, or deliberative process privileges. See NLRB v. Sears, Roebuck, & Co., 412 U.S. 132, 149-55 (1975). Courts are to construe this exemption "as narrowly 'as is consistent with efficient Government operation.'" Providence Journal Co. v. Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992) (quoting EPA v. Mink, 410 U.S. 73, 89 (1973)). Indeed, "'disclosure, not secrecy, is the dominant objective of [FOIA].'" Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)).

OSHA invoked the deliberative process privilege under exemption 5 as the basis for withholding the documents at issue in this case. Secretary Chao defends the decision on the same ground. She does not claim any other privilege with respect to the documents. The court conducts de novo review of an agency's decision to withhold materials under FOIA. 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). Pursuant to section 552(a)(4)(B), an agency bears the burden of proving that the documents withheld fall within one of the statutory exemptions from disclosure. See Church of Scientology, 30 F.3d at 228.

12

To establish that the deliberative process shields the information withheld by OSHA from disclosure under FOIA, Secretary Chao must prove that the documents are both "predecisional" and "deliberative." Providence Journal, 981 F.2d at 557; see also Maine v. Norton, 208 F. Supp. 2d 63, 66 (D. Me. 2002). The plaintiffs do not dispute that the January 23, 2003, e-mail and the nineteen-page responsive document constitute "intra-agency memorandums or letters" within the meaning of section 552(b)(5). They contend, however, that the deliberative process privilege does not extend to the documents because they are neither predecisional nor deliberative. They also argue that Biel waived any privilege attached to the documents by agreeing to produce all of Ponton's "work papers" relating to the audit and that the documents contain segregable factual information susceptible to disclosure notwithstanding any privilege.

"A document will be considered predecisional if the agency can (i) point to the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates." Providence Journal, 981 F.2d at 558 (internal quotation marks and citations omitted); see also Conservation Law

13

Found., Inc. v. Dep't of Air Force, No. 92-156, (D.N.H. Oct. 4, 1993), available at http://www.nhd.uscourts.gov.  "Not surprisingly, it has become nearly axiomatic in jurisprudence under [FOIA] that, to assert the 'deliberative process' privilege, the document must have actually been written prior to the time the decision was made."  N. Dartmouth Props., Inc. v. Dep't of Hous. & Urban Dev., 984 F. Supp. 65, 68 (D. Mass. 1997); see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975); Town of Norfolk v. Army Corps of Eng'rs, 968 F.2d 1438, 1458 (1st Cir. 1992).

Secretary Chao argues that Ponton's audit represents the operative decision for purposes of determining whether the e-mail message and responsive memorandum are predecisional.  The plaintiffs, however, contend that OSHA's refusal to pay Mitchell at the overtime rate for the hours in question or its subsequent denial of his grievance of that determination actually represents the operative decision.  They therefore argue that the deliberative process privilege does not extend to the documents Ponton used to prepare the audit, which the plaintiffs characterize as an effort to defend OSHA's previous decision in the arbitration, rather than an agency decision in its own right.

In support of her position, Secretary Chao relies heavily on the fact that Ponton repeatedly refers to his task as a

14

"determination" in his declarations submitted in connection with the pending motions. Ponton does not, however, tie this "determination" to any subsequent action taken by OSHA with respect to Mitchell's compensation. In fact, Ponton offers no explanation at all as to what OSHA did, or intended to do, as a result of his "determination." Even the most general information as to who asked him to make the "determination," when he was asked to do it, and, most importantly, why he was asked to do it, is conspicuously absent from Ponton's declarations.[5] Ponton's declarations therefore fail to establish any agency decision which followed the creation of the documents at issue here.[6]

Secretary Chao also argues that the decision reached by Ponton was whether to settle Mitchell's overtime claim, which at that point was already pending before the arbitrator. As the evidentiary support for this proposition, she relies on Beil's testimony, which she characterizes as showing that OSHA "was

---

[5]Indeed, Ponton's first declaration does not even acknowledge that the arbitration proceedings were already underway when he made his "determination."

[6]Secretary Chao also relies on May's statement that he prepared the memorandum at issue in this litigation "to assist Mr. Ponton in reaching his final determination . . . ." May Decl. ¶ 7. Like Ponton, May does not explain the purpose of this "final determination." May's declaration thus does not establish that the document he created was predecisional, because he does not offer any evidence as to what decision actually followed the document temporally.

15

willing to settle Mr. Mitchell's grievance if Mr. Ponton concluded that the work was non-exempt." That is not what Beil says in his declaration, however.

Beil actually states that he "informed Mr. Wilkinson that, if Mr. Ponton decided, after the audit, that the work at issue was non-exempt, I would likely settle the case for OSHA." Beil Decl. ¶ 6 (emphasis added). Contrary to Secretary Chao's argument, this testimony establishes that the decision to settle Mitchell's claim belonged to Beil, not Ponton, and that Ponton's "determination" merely affected the likelihood of a settlement, rather than constituting OSHA's decision on that issue.[7] Like Ponton, Beil also fails to explain why, when, or by whom Ponton was asked to make his "determination." Beil's declaration does not provide any evidence to support Secretary Chao's position that the documents sought here preceded a decision by OSHA.[8]

---

[7]Beil's testimony on this point is also hearsay, because he is offering his out-of-court statement to Wilkinson as proof of the truth of what was said, i.e., that OSHA would likely settle Mitchell's claim if its merit was confirmed by Ponton's audit. The plaintiffs have not moved to strike or otherwise objected to Beil's declaration on evidentiary grounds, however. Cf. Perez v. Volvo Car Corp., 347 F.3d 303, 314 (1st Cir. 2002).

[8]Biel and the other affiants who have submitted testimony in support of Secretary Chao's position also occasionally refer to Ponton's assignment as an "audit." See Second Ponton Decl. ¶ 3; Miller Decl. ¶ 7; Biel Decl. ¶ 7. The Supreme Court has suggested that documents "containing recommendations which never

16

Although an agency's declarations are often enough to win it summary judgment in a FOIA action, they "'will not suffice if the agency's claims are conclusory . . . or if they are too vague or sweeping.'" Cooper Cameron Corp. v. Dep't of Labor, 280 F.3d 539, 543 (5th Cir. 2002) (quoting Hayden v. Nat'l Sec. Agency/ Cent. Sec. Serv., 608 F.2d 1381, 1387 (D.C. Cir. 1979)); see also Hunt v. CIA, 981 F.2d 1116, 1119 (9th Cir. 1992) ("Affidavits must describe the justifications for nondisclosure with reasonably specific detail.") The declarations submitted with Secretary Chao's summary judgment papers simply characterize Ponton's audit as a "final determination," without explaining what the determination decided or what OSHA did or planned to do as a result. Accordingly, they "fail to carry [Secretary's Chao's] burden of proof [that section 5 applies] because at no place do they define, explain, or limit the 'deliberative

_____

ripen into agency decisions" are nevertheless exempt from disclosure if generated as part of an agency's "continuing process of examining [its] policies . . . ." Sears, 421 U.S. at 151, n.18. Secretary Chao does not argue that Ponton's "audit" was part of any such "continuing process" so as to excuse her from identifying an actual decision which resulted from the process. In any event, merely stating that documents were created as part of an audit is insufficient to invoke the deliberative process privilege. See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980) ("Characterizing . . . documents as 'predecisional' merely because they play into an ongoing audit process would be a serious warping of the meaning of the word").

17

process' which [she] seek[s] to protect." Vaughn v. Rosen, 523 F.3d 1136, 1146 (D.C. Cir. 1975); see also Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State, 818 F. Supp. 1291, 1299-1300 (N.D. Cal. 1992). Summary judgment in Secretary Chao's favor is therefore inappropriate.

Beyond failing to identify an agency decision which followed the creation of the documents at issue, the declarations filed by Secretary Chao actually support the plaintiffs' argument that Ponton's report was created solely to assist OSHA in defending against Mitchell's claim in the arbitration. Ponton confirms that prior OSHA decisions on Mitchell's overtime claim preceded what he seeks to characterize as the "final determination" on the issue. See Second Ponton Aff. ¶ 5. Moreover, neither Ponton nor Beil claims that OSHA regularly undertakes such a "final determination" in the middle of a pending arbitration or otherwise explains why the agency would commit its resources to arbitrating a wage decision which it did not even view as final in the first place, as Secretary Chao argues was the case here.

To the contrary, Beil's declaration suggests that Ponton's involvement with OSHA's handling of Mitchell's claim was a direct result of Beil's desire to use Ponton as a witness in the arbitration proceeding. Immediately after noting that he had "always reserved the right to have a Human Resources Specialist

18

testify" as part of OSHA's case, Beil states that "[a]t some point, an arrangement was made to have Thomas Ponton, a Human Relations Specialist for OSHA, conduct an audit of the specific work performed by Mr. Mitchell that was at issue in the case." Beil Aff. ¶ 5. In the absence of any evidence to the contrary, the only reasonable inference to draw from this testimony is that Ponton was asked to conduct the audit as part of his preparation to provide testimony on OSHA's behalf before the arbitrator.[9]

Based on this record, there can be no dispute that Ponton's e-mail and the response of May and Kilens were not predecisional, i.e., they did not predate an agency decision on Mitchell's eligibility for overtime pay. Instead, they were created after that decision had been reached, as part of OSHA's subsequent effort to defend the decision before the arbitrator. "Of course, once the decisionmaker has reached a conclusion and the process is over, the post-decisional views of subordinates about that decision are not within the scope of the [deliberative process] privilege." United States v. Hooker Chems. & Plastics Co., 123 F.R.D. 3, 43 (W.D.N.Y. 1988); see also Massachusetts v. Dep't of

_____

[9]Secretary Chao and the affiants, through the use of vague language such as "at some point" and "an arrangement was made," obfuscate the facts surrounding how Ponton came to make his "determination" of the merits of Mitchell's overtime claim. Such obfuscation does little to advance the merits of the Secretary's position in this case.

<u>Health & Human Servs.</u>, 727 F. Supp. 35, 44 (D. Mass. 1989) (exemption 5 inapplicable to materials discussing prior agency decisions); <u>Ditlow v. Volpe</u>, 362 F. Supp. 1321, 1327 (D.D.C. 1973). Accordingly, the documents at issue here do not fall within the protections of exemption 5.[10]

"When an agency seeks to protect material which, even on the agency's version of the facts, falls outside of the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." <u>Petroleum Info. Corp. v. Dep't of Interior</u>, 976 F.2d 1429, 1433 (D.C. Cir. 1992). Stripped of their conclusory assertions that the documents sought in this case were created to assist in Ponton's "final determination," the declarations submitted by Secretary Chao's own witnesses demonstrate that Ponton was charged with defending a previous OSHA decision, rather than making one in his own right. Secretary Chao has not submitted any other evidence which creates a factual dispute as to this conclusion. Because the documents are not predecisional, exemption 5 does not protect them from disclosure under FOIA. <u>See</u> <u>Providence Journal</u>, 981 F.2d at 558. As a result, the court does not need to reach the plaintiffs' other arguments. Their cross-motion for summary judgment is granted.

---

[10]Secretary Chao has not claimed that the documents would be immune from civil discovery and thus protected by exemption 5 on any basis other than the deliberative process privilege. The court's exemption 5 analysis is therefore limited to that ground.

<u>Conclusion</u>

For the foregoing reasons, Secretary Chao's motion to dismiss or, in the alternative, for summary judgment (document no. 8) is DENIED. The plaintiffs' cross-motion for summary judgment (document no. 21) is GRANTED. The plaintiffs' motion for a hearing on the merits of plaintiffs' motions to amend the complaint and theory of liability (document no. 18) is DENIED as moot. Secretary Chao shall make the January 23, 2003 e-mail and the responsive memorandum available to the plaintiffs in accordance with 5 U.S.C. §§ 552(a)(3) and 552(a)(4)(A) by December, 5, 2003. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 24, 2003

cc:  James R. Mitchell, pro se
     Scott S. Wilkinson, pro se
     Gretchen Leah Witt, Esquire

21