**SCHERING CORPORATION, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Resources, et al.**

**No. 85–5337.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1985.

Decided Dec. 13, 1985.

George M. Burditt, with whom Eugene M. Pfeifer, Washington, D.C., was on brief, for appellant.

Gerald C. Kell, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Thomas Scarlett, Chief Counsel, Food and Drug Admin. and J. Patrick Glynn, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellees. Josepyh E. DiGenova, U.S. Atty., Washington, D.C., also entered an appearance, for appellees.

Bruce F. Mackler, Washington, D.C., and Leona Marx, were on brief, for intervenor-appellee.

Before WRIGHT and EDWARDS, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Separate Concurring Statement filed by Circuit Judge J. SKELLY WRIGHT.

HARRY T. EDWARDS, Circuit Judge.

Schering Corporation ("Schering") appeals from an order of the District Court denying its motion for a preliminary injunction and granting the Government's motion to dismiss its suit. Schering sought to invalidate a settlement agreement that terminated a lawsuit between the Food and Drug Administration ("FDA") and Tri-Bio Laboratories, Inc. ("Tri-Bio"). The District Court dismissed the action without reaching the merits, holding that the legal and policy questions raised by Schering's claim were within the primary jurisdiction of the FDA and that the case was not yet ripe for judicial review. Shortly after the District Court's order of dismissal, the Supreme Court handed down *Heckler v. Chaney*,[1] which held that the FDA's decision to refrain from instituting enforcement proceedings is not subject to judicial review under the Administrative Procedure Act[2] (the "APA"). Because we believe that *Chaney* applies with full force to the facts of this case, we affirm the District Court's order of dismissal.[3]

## I. BACKGROUND

Under the Federal Food, Drug, and Cosmetic Act (the "Act"),[4] the FDA monitors the entrance of new drugs into the marketplace. Its jurisdiction includes new drug products intended for use with animals. Any *"new* animal drug" that has not been approved by the FDA is deemed unsafe and adulterated,[5] and, when marketed in interstate commerce, is subject to seizure and condemnation.[6] The Act, however, does not regulate the distribution of animal drug products that are *not* "new" drugs. Although the Act defines "new animal drugs,"[7] it does not *require* manufacturers to submit their products for premarketing review by the FDA to determine if they are new animal drugs subject to the Act. Thus, when animal drug products are introduced into the marketplace without prior review, the FDA must decide whether and how to initiate enforcement proceedings.

Schering, a major drug manufacturer, produces a drug sold under the brand name "Garasol" that is used for disease prevention in baby chicks. This product has been approved for such use by the FDA. In 1983, Tri-Bio, a competitor, began to sell a similar product, named "Gentaject," that has not been approved by the FDA.

In March 1983, the FDA instituted a seizure action against Gentaject in the Western District of Arkansas. The FDA secured a default judgment and a quantity of Gentaject was destroyed. In April, Tri-Bio filed a declaratory judgment action in the District Court for the Middle District of Pennsylvania, seeking a determination that Gentaject is not a "new animal drug" subject to the Act, and therefore that Tri-Bio need not obtain FDA approval to market it.

1. —— U.S. ——, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

2. 5 U.S.C. § 701 *et seq.* (1982).

3. We thus have no occasion to pass upon the grounds invoked by the District Court in dismissing this case. In light of our disposition of the case, we also find it unnecessary to address the Government's contention, not discussed by the District Court, but renewed upon appeal, that the case should be dismissed because Schering lacks standing to maintain this action.

4. 21 U.S.C. § 301 *et seq.* (1982).

5. *Id.* at § 360b(a).

6. *Id.* at § 334.

7. The term "new animal drug" means any drug intended for use for animals other than man, including any drug intended for use in animal feed but not including such animal feed,—

    (1) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof; ... or

    (2) the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions....

21 U.S.C. § 321(w) (1982).

Tri-Bio's theory was that Schering's Garasol product is no longer a new drug, and that Gentaject is identical to Garasol in all material respects.[8] The FDA filed a counterclaim alleging that Gentaject is an unapproved new drug and seeking an injunction against its distribution.

On June 30, 1984, Tri-Bio and the FDA entered into a stipulation of voluntary dismissal that settled the Pennsylvania lawsuit. Under the terms of the settlement, Tri-Bio agreed to file a citizen petition with the FDA seeking an administrative determination that Gentaject is not a new animal drug. For its part, the agency agreed not to

> initiate any enforcement litigation against Tri-Bio, its officers, or Gentaject on the basis that Gentaject is an unapproved new animal drug for a period of 18 months from the date of this agreement, or 30 days after any denial of the citizen petition, whichever is later.[9]

Tri-Bio submitted a citizen petition to the FDA on September 30, 1984. Thus, the practical consequence of the settlement was to transfer the locus of Tri-Bio's dispute with the FDA over the new drug status of Gentaject from a judicial to an administrative forum.

On November 5, 1984, Schering brought suit against the agency in the District Court for the District of Columbia, seeking a declaration that the settlement was invalid and an injunction rescinding it. Schering claimed that Gentaject is a new animal drug and that the settlement constituted a "de facto approval" of its sale. In January 1985, Schering moved for a preliminary injunction; the Government moved to dismiss the suit for failure to state a claim. Although the Government raised a number of arguments for dismissal, the District

Court disposed of the case on primary jurisdiction and ripeness grounds. The District Court apparently believed that the legality of the FDA's action turned on whether Gentaject was a new animal drug, and decided that deference to the pending administrative determination of that issue was appropriate. The case was thus dismissed.[10] Schering's motion for reconsideration was subsequently denied, and this appeal followed.

## II. ANALYSIS

This case, like *Heckler v. Chaney*, "turns on the important question of the extent to which determinations by the FDA *not to exercise* its enforcement authority over the use of drugs in interstate commerce may be judicially reviewed."[11] Here the FDA has elected not to pursue enforcement activities against Tri-Bio for a specified time period and has formalized its decision in a settlement agreement. This action may not be characterized as a decision that Gentaject is a "new animal drug," nor does it endorse Gentaject as safe and effective for its intended use. Rather, the agency has merely postponed any decision with regard to enforcement until it has had an opportunity to determine whether Gentaject is, in fact, subject to the Act's requirements.

The FDA action in this case falls squarely within the confines of *Chaney*. The Supreme Court in *Chaney* had before it the same statute that governs in the instant case and refused to review this same agency's decision to refrain from an enforcement action. The Court sent a clear signal that such decisions by the FDA involve a complex balancing of an agency's priorities, informed by judgments "peculiarly within its expertise,"[12] and that they are

---

**8.** This theory relies upon the premise that generically identical products—products that are "bioequivalent"—are the same "drug" within the Act's meaning. This is an unsettled question, expressly left open by the Supreme Court in *United States v. Generix Drug Corp.*, 460 U.S. 453, 460–61, 103 S.Ct. 1298, 1302–03, 75 L.Ed.2d 198 (1983).

**9.** *Tri-Bio Laboratories, Inc. v. United States of America*, Civ.Action No. 83–0559, (M.D.Pa. June 30, 1984).

**10.** *Schering Corp. v. Heckler*, Civ.Action No. 84–3368 (D.D.C. Feb. 7, 1985).

**11.** *Chaney*, 105 S.Ct. at 1654.

**12.** *Id.* at 1656.

therefore ill-suited for judicial review. Following a consistent line of authority pertaining to prosecutorial and enforcement discretion, the Court held that an agency judgment relating to the exercise of its enforcement power presumptively lies beyond the reach of APA review as an action "committed to agency discretion by law." [13] That presumption is overcome only "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." [14]

Under *Chaney*, the Supreme Court already has told us that this presumption is not defeated by the enforcement provisions of the Federal Food, Drug and Cosmetic Act. These provisions authorize, but do not compel the FDA to undertake enforcement activity; they "commit complete discretion to the Secretary to decide how and when they should be exercised." [15] The Court's decision in *Chaney* manifestly forecloses judicial review here in a case involving the same agency and the identical statute.

Schering contends that the agency's refusal to act in *Chaney* may be distinguished from this case in which the FDA affirmatively bound itself not to prosecute Tri-Bio for at least 18 months. Schering suggests that this constitutes a "de facto approval" of Gentaject, an approval that failed to comply with applicable statutory procedures. It points to language in *Chaney* reviewing (and distinguishing) the Supreme Court's decision in *Citizens to Preserve Overton Park v. Volpe:* [16]

*Overton Park* did not involve an agency's refusal to take requested enforcement action. It involved an affirmative act of approval under a statute that set clear guidelines for determining when such approval should be given. [17]

Schering's attempt to distinguish *Chaney* is wholly misguided. First, it is absolutely clear that the FDA has yet to determine whether Gentaject is a new drug. [18] Therefore, it can hardly be said that Tri-Bio has received agency approval of Gentaject. Second, in new animal drug cases, there are no statutory guidelines compelling the agency to investigate or pursue enforcement actions within any specified time frame. [19] Because the FDA is currently considering whether or not Gentaject *is* a "new animal drug," the settlement agreement merely holds enforcement in abeyance until the agency can determine whether Gentaject is a product subject to the Act's requirements. This is a paradigm case of enforcement discretion.

Nor may we distinguish this case from *Chaney* on the ground that the FDA has openly acknowledged its decision to refrain from enforcement in a formal settlement agreement. While we do not hold that *any* agency settlement with a potential regulatee, whatever its terms, is unreviewable under *Chaney*, we think it clear that in this case the agreement merely embodies a legitimate exercise of enforcement discretion. The FDA acted to delay its decision on Gentaject because it harbored doubts over the new drug status of the product; and it acted to settle the Pennsylvania law-

**13.** 5 U.S.C. § 701(a)(2) (1982).

**14.** 105 S.Ct. at 1656.

**15.** *Id.* at 1658.

**16.** 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

**17.** 105 S.Ct. at 1655.

**18.** We have no occasion to consider whether the FDA's enforcement discretion might somehow be narrowed if and when it determines that Gentaject is a new drug. On the record of this

case, we think it plain that the FDA has not yet decided whether Gentaject is a "new animal drug." Schering contends that various statements by FDA officials, coupled with the FDA's position in the Arkansas and Pennsylvania actions, amounts to a determination that Gentaject is a new drug. But such actions do not constitute "final agency action," and can hardly estop the agency from considering the question afresh in an appropriate administrative proceeding—as it is now doing.

**19.** Under the Act, Tri-Bio was free to market Gentaject without prior approval from the FDA, subject to a possible decision by the agency to initiate enforcement proceedings.

suit because it preferred to have the issue initially reviewed in an administrative rather than a judicial forum. This was precisely the sort of balancing of agency priorities and objectives, informed by judgments based on agency expertise, that, absent some "law to apply," should not be second-guessed by a court.[20]

In fact, Schering concedes that *Chaney* would bar review here if the FDA had decided not to prosecute Tri-Bio in the first instance, and had memorialized that decision in a written opinion, or even if the FDA had brought an enforcement action but then unilaterally abandoned it. Admittedly, the agency went further than that in this case, and assured Tri-Bio that it would be free from prosecution for at least 18 months. But this action simply represents the *quid pro quo* that the agency found necessary to procure Tri-Bio's abandonment of its declaratory judgment claim. We can no sooner question the soundness of this bargain than we could a unilateral agency decision not to prosecute *ab initio;* and granting Schering the relief it requests—rescission of the settlement agreement—would in no manner compel the FDA to proceed with an enforcement action against Tri-Bio. The FDA's action here was simply an exercise of its "complete discretion ... to decide how and when" to enforce the Act.[21]

We note that this is not a case where an agency has implemented a policy or pattern of nonenforcement that amounts to "an abdication of its statutory responsibilities,"[22] nor is it an instance where the agency's inaction rests on the false belief that it lacks jurisdiction.[23] No claim has been made that the agency's failure to initiate enforcement action violates any constitutional rights.[24] This case is on all fours with *Heckler v. Chaney,* and we uphold the

judgment of the District Court dismissing the plaintiff's action.

*Affirmed.*

J. SKELLY WRIGHT, Circuit Judge, concurring.

I concur in the result reached in this case.

---

**20.** *See Chaney,* 105 S.Ct. at 1656–57.

**21.** *Id.* at 1658.

**22.** *Id.* at 1656 n. 4; *id.* at 1660 (Brennan, J., concurring); *see Adams v. Richardson,* 480 F.2d 1159 (D.C.Cir.1973) (en banc).

**23.** *Chaney,* 105 S.Ct. at 1656 n. 4; *id.* at 1660 (Brennan, J., concurring).

**24.** *Id.* at 1659; *id.* at 1660 (Brennan, J., concurring). Nor is this a case where "an agency has refused to enforce a regulation lawfully promulgated and still in effect," *id.* at 1660 (Brennan, J., concurring).