**NATIONAL WILDLIFE FEDERATION,**
**Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**
**Respondent.**

**No. 90–1072.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 15, 1992.

Decided Dec. 11, 1992.

Erik D. Olson, Washington, D.C., for petitioner.

Joshua M. Levin, Atty., Dept. of Justice, with whom Roger Clegg, Acting Asst. Atty. Gen., and Paul Bangser, Atty., Office of Gen. Counsel, Washington, D.C., were on the brief for respondent.

Before MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The National Wildlife Federation ("NWF") petitions this court for review of a regulation promulgated by the Environmental Protection Agency ("EPA" or "agency") which allows the EPA discretion to refuse to initiate proceedings to withdraw a state's primary enforcement responsibility, or "primacy," for national drinking water standards under the Safe Drinking Water Act ("SDWA" or "Act") after it has formally "determined" pursuant to § 1413 of the Act that the state no longer meets primacy requirements. While we agree with the EPA that the SDWA confers wide discretion on the agency to prescribe the manner in which it "determines" that a state no longer satisfies the statutory primary enforcement duties, we find it contrary to the plain language of the Act for the EPA to refuse to initiate withdrawal proceedings once it has made the determination that the state no longer is in

compliance with the statute. We therefore grant the petition for review and find this aspect of the EPA's regulation contrary to the statutory language.

## I. THE STATUTORY AND REGULATORY SCHEME

■ The Safe Drinking Water Act of 1974, 42 U.S.C. §§ 300f *et seq.*, was enacted to ensure that public water supply systems meet minimum national standards for the protection of public health. According to pertinent provisions of the Act, the EPA must establish primary drinking water regulations, specifying maximum levels for contaminants that may have an adverse effect on the health of consumers, 42 U.S.C. § 300g–1, while states may, upon meeting prescribed requirements, obtain primary responsibility for administering and enforcing these EPA-generated standards, 42 U.S.C. § 300g–2. Section 1413 provides that "a State has primary enforcement responsibility for public water systems during any period for which the [EPA] Administrator determines ... that such State" has met various requirements, including "adopt[ing] drinking water regulations which are no less stringent than the national primary drinking water regulations," "implementing adequate procedures for the enforcement of such State regulations," and keeping such records and reports "as the Administrator may require by regulation." 42 U.S.C. § 300g–2(a). The manner by which a state may obtain or lose primacy was to be prescribed by EPA regulations:

> The Administrator shall, by regulation ..., prescribe the manner in which a State may apply to the Administrator for a determination that the [primacy] requirements ... are satisfied with respect to the State, the manner in which the determination is made, the period for which the determination will be effective, and the manner in which the Administrator may determine that such requirements are no longer met.

42 U.S.C. § 300g–2(b)(1). Before a decision by the EPA that a state no longer meets the primacy criteria "may become effective, the Administrator shall notify such State of the determination and the reasons therefor and shall provide an opportunity for public hearing on the determination." *Id.*

Pursuant to the statute, the EPA adopted regulations in 1976 which elaborated on the criteria for states to obtain primacy and specified that once primacy became effective, it would continue until terminated. 40 C.F.R. §§ 142.10, 142.12(a)(3) (1976). The regulations required an annual review to assess compliance with the primacy standards and directed that when the "Administrator's annual review, or other information available to him indicate that a State no longer meets the [primacy] requirements ..., he shall notify the State in writing of that fact." *Id.* §§ 142.12(b)(1), (b)(2). After allowing the state 30 days to submit "evidence demonstrating that the State continues to meet the requirements for primary enforcement responsibility," the Administrator was required to "either determine that the State no longer meets the [primacy] requirements ... or that the State continues to meet those requirements, and [to] notify the State of his determination." *Id.* §§ 142.12(b)(3), (b)(4). Before a determination of nonconformity with the primacy requirements could become effective, the EPA needed to provide notice and an opportunity for a public hearing, and afterwards, issue an order affirming or rescinding its previous determination. *Id.* §§ 142.12(b)(4), 142.13. Subsequent to the filing of an adverse order, a state was still permitted to "apply for a determination that it meets [the primacy] requirements by submitting to the Administrator information demonstrating that it has remedied the deficiencies found by the Administrator...." *Id.* § 142.13(h).

Congress substantially amended the SDWA in 1986 to provide, among other things, that the EPA regulate 83 specified contaminants by June, 1989. Pub.L. No. 99–339, 100 Stat. 642 (1986). In response, the EPA issued new primacy regulations in 1989 which required states to implement the new standards within the statutorily-prescribed 18–month period or apply for up to a two-year extension when the state "cannot meet the original deadline for rea-

sons beyond its control despite a good faith effort to do so." 54 Fed.Reg. 52,139 (1989), *codified at* 40 C.F.R. § 142.12(b)(2) (1991). The EPA also amended its primacy withdrawal regulation by providing:

When, on the basis of the Administrator's review or other available information, the Administrator *determines* that a State no longer meets the [primacy] requirements ..., and the State has failed to request or has been denied an extension under § 142.12(b)(2) of the deadlines for meeting those requirements, or has failed to take other corrective actions required by the Administrator, the Administrator *may* initiate proceedings to withdraw program approval. The Administrator shall notify the State in writing of EPA's intention to initiate withdrawal proceedings and shall summarize in the notice the information available that indicates that the State no longer meets such requirements.

54 Fed.Reg. 52,140 (1989) (emphasis added). At oral argument, the EPA counsel confirmed that this notification to the State represented the initiation of withdrawal proceedings. The procedures to be followed subsequent to notifying the state were left unchanged from the 1976 regulation. The offending state was permitted 30 days to submit evidence of compliance, after which the EPA was required to make what amounts to a second "determination" of noncompliance. *Id.; see* 40 C.F.R. §§ 142.17(a)(3), (a)(4) (1991).[1] And again, a public hearing was required before a determination of noncompliance could become effective. *See* 40 C.F.R. § 142.13 (1991). In the preamble to the new primacy rules, the agency emphasized that

EPA has always had discretion under the Act and primacy regulations to determine when to initiate program withdraw-

al from States that no longer meet the requirements for primacy.... EPA has revised section 142.17(a)(2) ... to make clear that the Agency's decision to initiate withdrawal whenever it determines that a State no longer meets primacy requirements ... is discretionary.

54 Fed.Reg. 52,130 (1989). In 1990, the NWF brought suit, challenging the new § 142.17(a)(2) on the substantive ground that its explicit grant of discretion to the Administrator on whether or not to initiate proceedings after he has "determined" that the state is not in compliance with the requirements for primacy was contrary to the mandate of § 1413(a) that primacy continues only "during any period for which the Administrator determines" that the state has met the primacy requirements, and on the procedural ground that the EPA had inappropriately failed to adopt the regulation through the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. § 553.[2] Further, the NWF attacked § 142.12(b)(2), the extension provision, as unlawful under the SDWA because it created a system of "split" primacy whereby both state and federal bodies would share enforcement responsibility for certain periods of time. Just prior to oral argument, the EPA moved for a partial stay, announcing that it would offer an opportunity for public comment on § 142.-17(a)(2). 55 Fed.Reg. 49,398 (1990). This court granted the partial stay and went on to uphold the EPA's extension rule as a reasonable construction of the SDWA. *National Wildlife Federation v. EPA*, 925 F.2d 470 (D.C.Cir.1991).

After notice and comment, the EPA reissued § 142.17(a)(2) in 1991, explaining again in the preamble of the new regulation the basis for its change from the 1976

---

1. The part of the regulation permitting this "second" determination is not being challenged in the instant petition. *See* Respondent's Brief at 19 n. 4. Thus, the only question before us is whether the EPA could, consistent with the SDWA, change its 1976 regulation that required the agency to notify the state after information "indicates" that the state no longer meets the primacy requirements to the 1991 version that permits the agency to do nothing after it "deter-

mines" the state no longer meets the primacy requirements.

2. The EPA had explained that the failure to invoke the notice and comment rulemaking process was based on its belief that the new regulation "constitutes only a clarification of the Agency's discretion under the Act and existing regulations to initiate withdrawal procedures." 54 Fed.Reg. 52,130–31 (1989).

regulation. 56 Fed.Reg. 25,050 (1991), *codified at* 40 C.F.R. § 142.17(a)(2) (1991). First, the agency said that the "EPA's discretion on the initiation of withdrawals is consistent with [the statutory] scheme in that it allows the Agency to take into account the significance of particular violations of primacy requirements and the amount of time needed for the State to resolve any such violations." 56 Fed.Reg. 25,048. As a policy matter, the EPA believed "initiating withdrawal would be unnecessary and inefficient if it appears that a State will soon resolve the problems with its program or that the State program deficiencies are of a minor or technical nature." *Id.* The better approach, the EPA felt, was "to allow the Agency the flexibility to resolve State program deficiencies in the most effective way." *Id.* Finally, the substitution of the term "determines" in the 1991 regulation for the term "indicate" in the third line of the 1976 regulation was explained as follows:

> [T]he previous regulation stated that the Administrator shall notify the State when information "indicates" that the State no longer meets primacy requirements. Under the new regulation, the Administrator may initiate program withdrawal proceedings when the Administrator "determines" that the State no longer meets primacy requirements. EPA substituted this term to clarify and emphasize that a finding that a State no longer meets the requirements for primacy is a decision that rests within the discretion of the Administrator.

*Id.* at 25,049.

## II. STATUTORY INTENT

■ In reviewing the EPA's construction of the SDWA, which the agency is charged with administering, we must first decide "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Here, the question is whether the EPA, after (1) it "determines" that a state no longer meets the primacy requirements, and (2) the state has been refused an extension,

and/or (3) the state has failed to take corrective actions, retains unfettered discretion whether to initiate primacy rescission proceedings. Our review of the SDWA satisfies us that Congress, while anticipating that the EPA would enjoy the broadest discretion in reaching the determination that the primacy criteria are no longer met, did not intend to allow the EPA to ignore a determination, once made, and refrain from initiating primacy withdrawal proceedings. Section 1413(a) is explicit that a state enjoys primacy only "during any period for which the Administrator *determines* ... such State" satisfies the primacy requirements. 42 U.S.C. § 300g–2(a) (emphasis added). Therefore, an EPA *determination* that such requirements are no longer met terminates by statutory fiat the state entitlement to primacy and triggers the agency process authorized by § 1413(b)(1) for initiating withdrawal. Recognizing nonetheless that both the statute, and governing principles of administrative law such as those embodied in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), envision a wide latitude for the agency in enforcement decisions, we seek to interpret the statutory scheme in a way so as to accommodate both clear legislative commands and agency needs for flexibility and discretion in remedying minor deficiencies on the part of primacy states.

■ First, the Act affords the EPA wide discretion to establish the procedures and criterion for deciding when to grant and withdraw primacy. Section 1413(b) provides that the EPA shall "prescribe the manner in which a State may apply to the Administrator for a determination that the [primacy] requirements ... are satisfied with respect to the State, the manner in which the determination is made, the period for which the determination will be effective, and the manner in which the Administrator may determine that such requirements are no longer met." 42 U.S.C. § 300g–2(b)(1). Thus, in *National Wildlife Federation*, we upheld the part of the EPA's regulation permitting states a two-year extension to adopt new standards because we could not "find in § 1413 any

direct congressional insistence that a state's primacy as to the standards with which its law conforms must cease the minute it fails to meet the deadline for adoption of a new standard." 925 F.2d at 473. We concluded that for the EPA, in § 142.17(a)(2), to refrain from launching rescission proceedings until "the State has failed to request or has been denied an extension under § 142.12(b)(2) of the deadlines for meeting those requirements" was entirely reasonable. *Id.* at 474. Similarly, the portion of § 142.17(a)(2) which permits the EPA to hold back on primacy revocation until the state "has failed to take corrective actions required by the Administrator" allows the EPA to negotiate with the state as long as necessary before determining that the primacy requirements are no longer met.

■ Second, even where a "determination" of noncompliance is made, the statute does not require the agency to immediately withdraw primacy. Rather, the EPA is directed to provide notice and a public hearing before its determination of nonconformity with the primacy standards becomes effective. 42 U.S.C. § 300g–2(b)(1). As a consequence of evidence adduced at the hearing, the EPA is entitled to conclude that its original decision was in error or that the state has remedied any deficiency and to decide against withdrawal. *Id.; see also* 40 C.F.R. § 142.13(f) (1991).

■ Thus, the SDWA builds ample discretion into the front-end of the EPA's decisionmaking process by giving the agency discretion to decide "the manner in which the Administrator may determine that [primacy] requirements are no longer met." 42 U.S.C. § 300g–2(b)(1). The agency is free to decide that technical, temporary or otherwise unimportant violations of the primacy requirements do not warrant a "determination" of noncompliance, or that the better approach for meeting the Act's goals is to negotiate with the offending state or to permit more time for the state to come back into compliance. And even after a determination is made, the statute does not require it be written in stone. The public hearing procedure in § 1413(b)

provides the EPA flexibility to change its previous decision in light of a reevaluation of the state's performance or changed circumstances.

What the EPA, however, is attempting to do in the part of § 142.17(a)(2) challenged by the petitioners here is to create still another, third point of discretion occurring between the two pre-determination and post-determination stages just mentioned, *i.e.,* at the point when the Administrator has formally "determined" that the state does not meet the statutory requirements. Under the revised regulation, the EPA, upon determining that a state does not meet the primacy requirements (and has refused to seek or been denied an extension, and/or has failed to take corrective actions requested by the EPA), may still decide to do nothing and refuse to notify the state of its intention to withdraw primacy. The EPA argues that the regulation is entirely consistent with the statutory language because § 1413(a) applies only to the initial grant of primacy, while § 1413(b) relates to primacy withdrawal and allows the agency discretion to decide when primacy withdrawal is appropriate. Respondent's Brief at 17–18. We do not believe this attempt to carve out a third area of discretion can be squared with the language of the statute.

■ Section 1413(a) of the SDWA, which provides that a state "has primary enforcement responsibility for public water systems during any period for which the Administrator determines" that the state satisfies the primacy criteria, does not relate only to the grant of primacy but clearly envisions an ongoing obligation on the part of the EPA to monitor each primacy state's conformity; an obligation recognized by the EPA in its regulation mandating annual reviews, 40 C.F.R. § 142.17(a)(1) (1991). When these reviews or other information cause the EPA to suspect noncompliance with the statutory requirements and its follow-up investigation and failed attempts at informal resolution finally cause the Administrator to formally "determine" that a state no longer meets the primacy requirements, § 1413(a) mandates that the state is

no longer entitled to primacy. Further evidence of the fact that § 1413(a) is not limited to the grant of primacy can be found in § 1413(b) which states that the grant and withdrawal of primacy depend first on the Administrator's determination that the primacy requirements identified in § 1413(a) "are met or are no longer met." 42 U.S.C. § 300g–2(b)(1). That is, primacy can neither be granted nor withdrawn by the Administrator until he makes a determination regarding the primacy requirements in § 1413(a).

 The EPA is given discretion in § 1413(b) on how to make that determination and how to conduct withdrawal proceedings, but not on whether to permit the state to continue its primary status following a formal "determination" that the primacy requirements are no longer met. The grant of procedural discretion in § 1413(b) does not overrule the substantive requirement of § 1413(a) that a state retains primacy only so long as the EPA determines the state to be in compliance with the primacy requirements. Congress clearly meant a "determination" to be not merely an indication or preliminary assessment of noncompliance, but rather a conclusion from which statutory consequences would flow: "[B]efore a determination of the Administrator that such requirements are met or are no longer met with respect to a State *may become effective*, the Administrator shall notify such State of the determination and the reasons therefor and shall provide an opportunity for public hearing on the determination." 42 U.S.C. § 300g–2(b)(1) (emphasis added). The EPA's interpretation would strip the statutory term "determines" of all consequential meaning; instead of acting as the trigger for granting or withdrawing state primacy, the "determination" under the EPA's current version of § 142.17(a)(2) would require nothing from the agency. The Administrator would only need to notify the state if he intended to initiate withdrawal proceedings. 40 C.F.R. § 142.17(a)(2) (1991).

The EPA posits that its 1991 regulation is simply a reassertion of the agency's longstanding position, first announced in the 1976 regulation, that the agency retains the discretion to decide when to initiate primacy withdrawal. The agency explains: "EPA understood that its initial finding of state program deficiencies—whether cast as an 'indication' or as a 'determination'—is typically an informal finding which may but *need not* lead to written notice to a state." Respondent's Brief at 32 (emphasis in original). However, on the face of the 1976 regulation, when information indicated that a state no longer met the primacy requirements, the Administrator was *required* to notify the state that it no longer met the primacy requirements and permit the state to submit evidence to the contrary. 40 C.F.R. § 142.12(b)(2) (1976). Despite the EPA's assertion that the actual practice is otherwise, we note that the agency expressed an intent in the 1991 version to explicitly grant the Administrator discretion not to notify the state and give it a chance to respond after making a discretionary "determination" of noncompliance through the substitution of the word "determines" for "indicate." *See* 56 Fed.Reg. 25,049 (1991). In sum, it is apparent that the insertion of an additional post-determination discretion to choose not to notify an offending state in the 1991 regulation does not represent the agency's longstanding view on primacy withdrawal—at least so far as its regulations are concerned—since the plain language of the previous regulation, in force for some fifteen years, made no such provision. In any event, we do not see how either the old or the new regulation could provide for this post-determination discretion in light of the clear language in the statute to the contrary.

 In reaching today's decision, we are of course cognizant of the principle enunciated in *Heckler v. Chaney*, 470 U.S. at 821, 105 S.Ct. at 1649, that agency nonenforcement decisions should generally not be subject to judicial review because such decisions involve the balancing of various factors, including "whether a violation has occurred, ... whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement

action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." 470 U.S. at 831, 105 S.Ct. at 1656. In *Chaney* and its progeny, courts have concluded that enforcement decisions are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), absent meaningful standards in the statute for judicial review. *Chaney*, 470 U.S. at 832–33, 105 S.Ct. at 1656. *Coker v. Sullivan*, 902 F.2d 84, 88 (D.C.Cir.1990). We believe the presumption of unreviewability of agency nonenforcement decisions is inapplicable or at least rebutted here for two basic reasons. First, the NWF raises a facial challenge to the EPA statutory interpretation embodied in § 142.17(a)(2), *see* 56 Fed.Reg. 25,048 (1991) (describing how § 142.17(a)(2) is based on EPA's interpretation of SDWA), and does not contest a particular enforcement decision. *See Assiniboine and Sioux Tribes v. Bd. of Oil and Gas Conservation*, 792 F.2d 782, 791–92 (9th Cir.1986) (citing cases); *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C.Cir.1985) (appellant may challenge legal standards governing INS operations even though it could not challenge individual decisions on whether aliens should be admitted). "[W]hen a legal challenge focuses on an announcement of a substantive statutory interpretation, courts are emphatically qualified to decide whether an agency has acted outside of the bounds of reason.... Even if a statutory interpretation is announced in the course of a nonenforcement decision, that does not mean that it escapes review altogether." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*, 783 F.2d 237, 245–46 (D.C.Cir.1986); *see also ICC v. Bhd. of Locomotive Engineers*, 482 U.S. 270, 289 & n. 1, 107 S.Ct. 2360, 2371 &

n. 1, 96 L.Ed.2d 222 (1987) (Stevens, J., concurring) (citing, among other cases, *Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, to support the proposition that "[w]hen an agency denies rehearing on a legal ground, such as when it premises its decision on its reading of the statute, the reviewing court has a significant role to play; it must decide whether that reading can be sustained, or whether it is contrary to law"); *Montana Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. FLRA*, 898 F.2d 753, 756 (9th Cir.1990); *Shelley v. Brock*, 793 F.2d 1368, 1373 (D.C.Cir.1986). Indeed, although the EPA vigorously defends its discretion not to invoke withdrawal even when a determination has been made, the EPA's brief concedes that the "EPA does not suggest that its primacy withdrawal rule is an unreviewable agency action under the APA, 5 U.S.C. § 701(a)(2)." Respondent's Brief at 24 n. 6.[3]

■ Second, and most critically, the presumption of unreviewability does not apply where there is "law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). "If [Congress] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' under § 701(a)(2), and courts may require that the agency follow that law; if it has not, then an agency refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of that section." *Chaney*, 470 U.S. at 834–35, 105 S.Ct. at 1657. When the SDWA directs at § 1413(a) that states have primacy only "during [the] period for which the Administrator determines" that the

---

**3.** Moreover, we note that the enforcement decision involved here relates to whether federal or state authorities shall have primary responsibility for monitoring the water quality of an entire state's public water supply system. That kind of federal/state allocation of enforcement authority is somewhat different from the typical enforcement context in which *Chaney* originated or is customarily applied. *See Chaney*, 470 U.S. at 831–32, 105 S.Ct. at 1656 (unreviewability presumption is based in part on analogy to

prosecutorial discretion); *see, e.g., Schering Corp. v. Heckler*, 779 F.2d 683, 685 (D.C.Cir. 1985) (applying *Chaney* presumption to agency's decision not to pursue enforcement activities against company for specified period of time). Here the concern is not so much remedying or sanctioning a particular statutory violation but instead determining who will have overall responsibility for the safety of a state's public water drinking supply.

statutory primacy requirements are met, the statute reflects an intent to circumscribe agency enforcement discretion to ignore its determination and also provides a meaningful standard for defining the limits of the EPA's discretion. The statutory language indicates that a state is not entitled to primacy after the EPA "determines" that it no longer meets the primacy requirements, and therefore there can be no doubt that Congress has intended to limit the EPA's discretion to stop the proceedings at that point. We emphasize again, our review focuses only on what the agency may do following a formal determination of noncompliance and does not require delving into the Administrator's complex decisionmaking process regarding whether to make such a determination in the first instance. Thus, because the statute withdraws discretion from the agency and provides guidelines for the exercise of enforcement power at the point a determination of noncompliance has been made, the unreviewability presumption does not apply. *See Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Chaney*, 470 U.S. at 833, 105 S.Ct. at 1656–57 (*Dunlop* "presents an example of statutory language which supplied sufficient standards to rebut the presumption of unreviewability").

### III. CONCLUSION

In amending the primacy withdrawal regulation in 1991, the EPA asserted that it must have the flexibility of pursuing options short of primacy revocation in dealing with state program deficiencies. *See* 56 Fed.Reg. 25,048. Because § 1413 of the SDWA is a "broad grant of discretion to EPA to establish a system for grant and withdrawal of primacy," *National Wildlife Federation*, 925 F.2d at 473, the EPA was entitled to tighten up the language in its 1976 regulation to clarify that even when information "indicates" that a state no longer satisfies the primacy standards, any "determination" of nonconformity is left to the EPA's discretion. Where the agency went too far was in providing that even after a state has been formally "determined" to be in noncompliance, has not

sought or has been denied an extension, and/or has failed to take corrective actions recommended by the EPA, that determination has no consequence for the statutory imperative that a state may have primacy only during the period the Administrator "determines" it is in compliance, *i.e.*, the EPA has no obligation to take the initial, nonconclusive action of notifying the offending state that it intends to withdraw the state's primacy. We do not think the statute on its face allows this result.

Finding this aspect of the EPA's primacy withdrawal regulation contrary to the language of the SDWA, we grant the petition for review and remand to the agency for modification in light of this opinion.

*It is so ordered.*