USCA1 Opinion

 

 September 27, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1097 RICHARD AMANN, ET AL., Plaintiffs, Appellants, v. TOWN OF STOW, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Richard Amann on brief pro se. _____________ Kevin M. Hensley and Needham and Warren on brief for appellee, _________________ ___________________ Town of Stow. Christine Hasiotis, Maynard M. Kirpalani and Parker, Coulter, ___________________ ______________________ _________________ Daley & White on brief for appellee, Stow School System. _____________ Myles E. Flint, Acting Assistant Attorney General, Dirk Snel, _______________ __________ Elizabeth M. Ahern, Andrew C. Mergen, Attorneys, Department of ____________________ __________________ Justice, Steven Neugeboren, Attorney, United States Environmental _________________ Protection Agency, and Dianne G. Chabot, Assistant Regional Counsel, ________________ United States Environmental Protection Agency, on brief for appellee, United States. Scott Harshbarger, Attorney General, and Pierce O. Cray, ___________________ _________________ Assistant Attorney General, on brief for appellee, Commonwealth of Massachusetts. ____________________ ____________________ Per Curiam. Christopher Amann is a learning-disabled __________ child who for several years attended public school in Stow, Massachusetts. In 1987, Christopher's parents withdrew him from the public school system and sent him to a private school that specializes in teaching children with learning disabilities. In 1989, the Amanns attempted to obtain reimbursement for the cost of the private school placement. Stow responded by framing an "individualized education plan" [IEP] that envisioned Christopher's return to public school. The Amanns rejected this plan and initiated administrative proceedings pursuant to the Individuals with Disabilities Act [IDEA], 20 U.S.C. 1415, claiming that the IEP was inadequate for Christopher's needs. To this the Amanns later added a claim that, regardless of the educational adequacy of the IEP, the Stow schools themselves were physically inadequate because their drinking water was contaminated with unsafe levels of lead. When the Massachusetts Bureau of Special Education [BSEA] declined to give them the relief they sought, the Amanns filed suit under both the IDEA and the Safe Drinking Water Act [SDWA], 42 U.S.C. 300f et seq. __ ___ It may be convenient to refer to this lawsuit, which named both the Town of Stow and the Commonwealth of Massachusetts, as Amann I. _______ The district court dismissed the complaint in Amann I, _______ ruling (1) that Stow's proposed IEP was adequate, and (2) that the Amanns had failed to give the notice that is a prerequisite to any suit under the SDWA. We affirmed. Amann _____ v. Stow School System, 982 F.2d 644 (1st Cir. 1992). __________________ The Amanns returned to the BSEA in 1991, challenging the adequacy of the IEP that Stow had proposed for the 1991-1992 school year, and again complaining about the presence of lead in the public school's water supply. Again, the BSEA determined that the IEP was adequate; it also ruled that, although the piped water in the school contained lead, Stow adequately had ensured the safety of its students by providing bottled water for drinking and cooking. Again, the Amanns sought review of the BSEA decision in federal court. The district court dismissed this lawsuit (which we will refer to as Amann II) on the ground that it had not been ________ filed within the 30-day limit applicable to IDEA suits in Massachusetts. Amann v. Stow, 991 F.2d 929 (1st Cir. 1993). _____ ____ On the same day that they filed Amann II, the appellants ________ also commenced this lawsuit under the SDWA. Their complaint named the Town of Stow, the Stow School System, the Commonwealth of Massachusetts and the United States, and sought both compensation and injunctive relief. At length, the district court granted judgment to each of the defendants, and this appeal followed. -3- I _ The Amanns' claim against the United States sought an order directing the Environmental Protection Agency [EPA] to revoke Massachusetts' primary enforcement responsibility under the SDWA. See 42 U.S.C. 300g-2 (giving states ___ primary enforcement responsibility as long as they meet certain criteria). However, Congress anticipated "that the EPA would enjoy the broadest discretion in reaching the determination that the primary criteria are no longer met," National Wildlife Fed'n v. United States EPA, 980 F.2d 765, _______________________ _________________ 770 (D.C.Cir. 1992), and the SDWA authorizes citizens to sue the EPA only where the agency has failed to perform an act or duty which is not discretionary, 42 U.S.C. 300j-8(a)(2). ___ The Amanns therefore had no statutory authority to sue the EPA and the district court correctly dismissed their claim against the United States. II __ The district court also correctly dismissed the claim against the Commonwealth of Massachusetts. The complaint named the Commonwealth, not one of its officials, as a defendant, and "[i]t is clear, of course, that in the absence of consent a suit in which the State . . . is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, _________________________________ _________ 100 (1984). See also 42 U.S.C. 300j-8(a)(1) (authorizing ___ ____ -4- citizen suits against a "governmental instrumentality or agency" only " to the extent permitted by the eleventh amendment"). We see no evidence that the Commonwealth consented to suit in this case. III ___ The Amanns assert that the Town of Stow and the Stow School System [collectively Stow] are in violation of the SDWA due to the presence of lead in the water supplied to the school. They also allege that Stow violated the public notice provision of the SDWA. 40 C.F.R. 141.34(a). The district court granted Stow's motion for summary judgment. According to EPA regulations, the school water supply system is not a "community water system" but a "non- transient, non-community water system." See 40 C.F.R. ___ 141.2 (defining both terms). Maximum contaminant levels for lead applied only to community water systems until December 7, 1992. 40 C.F.R. 141.11(a). Since that date, the EPA has been phasing in a new "lead and copper rule" which sets maximum levels for both community and non-community water systems. The rules are phased in at different times for different size systems and began to apply to non-community water systems the size of Stow only on July 1, 1993. 40 C.F.R. 141.86(d). As of that date, Stow is required to monitor its water system for a six month period in order to determine whether "the system exceeds the lead or copper -5- action level and is therefore required to implement the corrosion control treatment requirements under [40 C.F.R.] 141.81." 40 C.F.R. 141.86(d)(ii). "The lead action level is exceeded if the concentration of lead in more than 10 percent of tap water samples collected during any monitoring period conducted in accordance with 141.86 is greater than 0.015 mg/L." 40 C.F.R. 141.80(c)(1). A system which exceeds the lead action level is required to follow a system of treatment steps which must begin "within six months after it exceeds one of the action levels." 40 C.F.R. 141.81(e)(1). See also 40 C.F.R. 141.83(a)(1) ("A system ___ ____ exceeding the lead or copper action level shall complete lead and copper source water monitoring ( 141.88(b)) and make a treatment recommendation to the State ( 141.83 (b)(1)) within 6 months after exceeding the lead or copper action level."). In other words, as we understand the regulations, the only obligation imposed now upon Stow as far as lead contamination is concerned is to monitor its system for lead presence. No treatment steps are required until six months after the completion of the first monitoring period (which ends on January 1, 1994). The Amanns, however, have not alleged that Stow has failed to monitor the presence of lead in its water system. Rather, they allege that the system contains excessive amounts of lead. Since we understand the school water system -6- to be not yet subject to the maximum lead level imposed by the EPA, we find that Stow was entitled to judgment as a matter of law on this issue and that summary judgment was appropriate. See Mattoon v. Pittsfield, 980 F.2d 1, 7 (1st ___ _______ __________ Cir. 1992) (SDWA allows citizens suits only for ongoing violations). The Amanns also allege that Stow violated the public notification requirement contained in 40 C.F.R. 141.34(a). This section requires that the owner of any "water system shall issue notice to persons served by the system that may be affected by lead contamination of their drinking water." Subsections (b), (c) and (d) of the same regulation outline the required manner and content of the notice. Appellants concede that permanent signs are posted in the school showing the drinking water supply to be hazardous. See 40 C.F.R. 141.34(b) ("For non-transient, non-community ___ water systems, notice may be given by continuous posting."). Moreover, they have provided no elaboration in their complaint, in their opposition to summary judgment or in their brief as to how this notice is inadequate. Even pro se plaintiffs cannot survive a motion for summary judgment unless they refer to some material facts to support their bare allegations. See Fed. R. Civ. P. 56(e). ___ The district court's judgment is affirmed. ________ -7-