**UNITED STATES of America, Plaintiff,**

v.

**RANGE PRODUCTION COMPANY et al., Defendants.**

**Case No. 3:11–cv–116–F.**

United States District Court, N.D. Texas, Dallas Division.

June 20, 2011.

---

Bradley L. Levine, Keith Taketo Tashima, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, Lynette S. Wilson, Katherine Savers McGovern, DOJ, U.S. Attorney's Office, Dallas, TX, for Plaintiff.

J. Stephen Ravel, Diana L. Nichols, Kelly Hart & Hallman LLP, Austin, TX, Andrew D. Sims, Harris Finley & Bogle PC, David P. Poole, Range Resources Corporation, Dee J. Kelly, Sr., Kelly Hart & Hallman, Russell R. Barton, Harris Finley & Bogle, Fort Worth, TX, for Defendants.

### ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS AND STAYING CASE

ROYAL FURGESON, Senior District Judge.

BEFORE THE COURT is a Motion to Dismiss filed by Defendants Range Production Company and Range Resources Corporation (collectively "Range") on March 21, 2011 (Docket No. 7). In its Motion, Range seeks to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, Rule 12(b)(6). Plaintiff United States of America ("the United States") filed a Response on May 9, 2011 (Docket No. 12). Range filed a Reply on May 23, 2011 (Docket No. 16). A hearing regarding this Motion was held on June 14, 2011. After considering the arguments of both parties, it is the opinion of the Court that Range's Motion should be DENIED WITHOUT PREJUDICE.[1]

### I. Statutory Framework of the Safe Drinking Water Act

This action has been brought by the United States on behalf of the Environmental Protection Agency ("the EPA") to enforce an Emergency Administrative Order issued by the EPA pursuant to its purported authority under the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f et seq. The SDWA was enacted "in order to protect the nation's drinking water by ensuring public water supply systems meet certain minimum national standards." Goliad Cnty., Tex. v. Uranium Energy Corp., No. V–08–18, 2009 WL 1586688, at *5 (S.D.Tex. June 5, 2009) (Rainey, J.). Upon meeting prescribed requirements, states may obtain primary responsibility for administering and enforcing the standards generated by the EPA. National Wildlife Fed'n v. E.P.A., 980 F.2d 765, 768 (D.C.Cir.1992); 42 U.S.C. § 300g–2. In Texas, that authority has been obtained by the Texas Commission on Environmental Quality, with some responsibilities being in the hands of the Railroad Commission of Texas. See 16 T.A.C. § 3.30.

The EPA issued the Emergency Administrative Order in this case pursuant to its authority under Section 1431 of the SDWA. Section 1431 provides:

(a) Actions authorized against imminent and substantial endangerment to health Notwithstanding any other provision of this subchapter, the Administrator, upon receipt of information that a contaminant which is present in or is likely to enter a public water system or an underground source of drinking water, or that there is a threatened or potential terrorist attack (or other intentional act designed to disrupt the provision of safe drinking water or to impact adversely the safety of drinking water supplied to communities and individuals), which may present an imminent and substantial endangerment to the health of persons, and that appropriate State and local authorities have not acted to protect the health of such persons, may take such actions as he may deem necessary in order to protect the health of such persons. To the extent he determines it to be practicable in light of such imminent endangerment, he shall consult with the State and local authorities in order to confirm the correctness of the information on which action proposed to be taken under this subsection is based and to

---

1. This resolves Docket No. 7.

ascertain the action which such authorities are or will be taking. The action which the Administrator may take. include (but shall not be limited to) (1) issuing such orders as may be necessary to protect the health of persons who are or may be users of such system (including travelers), including orders requiring the provision of alternative water supplies by persons who caused or contributed to the endangerment, and (2) commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction.

(b) Penalties for violations; separate offenses

Any person who violates or fails or refuses to comply with any order issued by the Administrator under subsection (a)(1) of this section may, in an action brought in the appropriate United States district court to enforce such order, be subject to a civil penalty of not to exceed $[16,500] for each day in which such violation occurs or failure to comply continues.

42 U.S.C. § 300i; 40 C.F.R. § 19.4 Table.

## II. Factual and Procedural Background

Range is involved in drilling gas wells in the area of Fort Worth, Texas. In 2009, Range drilled two such wells, which were drilled vertically several thousand feet below the surface before the drill bore horizontally to finish the drilling of the well. The horizontal bores of the wells at issue are approximately one mile below the surface. These gas wells attempt to draw gas from the Barnett Shale Formation.

The EPA alleges that Range's activities have affected the water within two domestic water wells in Hood County. According to the EPA, these two wells drilled by Range are the only wells within half a mile of the domestic water wells at issue. These water wells included a domestic water well serving the home of Steven and

Shyla Lipsky (collectively "Lipsky"), which was drilled to a depth of approximately 200 feet in 2005, and a domestic water well serving the home of Mr. and Mrs. Rick Hayley (collectively "Hayley"), which was drilled in 2002 to a depth of about 220 feet. The Lipsky well and the Hayley well are approximately 120 feet and 470 feet in horizontal distance, respectively, from one of Range's gas wells. The tracts of land owned by Lipsky and Hayley are adjacent. The EPA alleges that between September 2009 and September 2010, the Hayley residence suffered a lack of water pressure from its water supply well. The EPA also alleges that the Lipskys noticed no problems with their water quality until late 2009, after the Range wells had been drilled. However, the Complaint does not specify what information was provided to the EPA and what problems the Lipskys experienced with their water well after late 2009. According to Range's Reply brief, Mr. Lipsky informed the EPA of the issues with the water in August 2010.

In August 2010, the EPA began conducting tests upon private domestic water wells in the proximity of the Range gas wells. EPA testing conducted during the following months determined that there was a significant presence of dissolved methane and other substances dangerous to human health in the wells, and concluded that the contamination of the wells was likely to be due to gas development and production activities in the area. The state of Texas's governing body for such matters, the Railroad Commission of Texas, also investigated Range's production activities after learning of the contamination of the private water wells. During this time, the EPA was unsatisfied with the Railroad Commission of Texas's efforts to combat Range's apparent role in the contamination of the wells, and was convinced that the Railroad Commission would not take any action against Range.

On December 7, 2010, the EPA issued an Emergency Administrative Order ("the Emergency · Order") pursuant to its claimed authority under Section 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300i. In the Emergency Order, the EPA determined that the contamination may create "an imminent and substantial endangerment to the health of persons," noting that the level of methane found in the wells could be flammable, and consumption of the benzene present in the wells could contribute to various health problems. Emergency Order, Docket No. 7–1, at ¶ 41. In a section entitled "Conclusions of Law," the Emergency Order concluded that contaminants were present in an underground source of drinking water, that Range had caused or contributed to the endangerment of persons through such contaminants, and that action taken by the EPA as proscribed in the Emergency Order was necessary to protect the health of persons. Id. at ¶¶ 42–49. Range was directed in the Emergency Order to (1) notify the EPA of whether it intended to comply with the Emergency Order within 24 hours; (2) provide replacement water supplies to the recipients of water from the affected water wells within 48 hours; (3) install explosivity meters at the affected dwellings within 48 hours; (4) submit a survey listing water wells within 3,000 feet of the gas wells at issue with a plan for EPA approval to sample those wells to see if they have been contaminated, including a air and water samplings; (5) submit a plan for EPA approval to conduct soil gas surveys and indoor air concentration analysis of the dwellings served by the affected water wells within 14 days; and (6) submit a plan for EPA approval to identify gas flow pathways to the Trinity Aquifer, eliminate gas flow to the Trinity Aquifer if possible, and remediate areas of the Trini-

ty Aquifer that have been impacted. Id. at ¶ 50. The Emergency Order notified Range that violation of the Emergency Order could subject it to a civil penalty of up to $16,500 per day of violation. In its Motion, Range contends that the Emergency Order, in only providing for an informal ·conference with no evidentiary hearing or opportunity to challenge the Emergency Order, does not provide Range with any process to challenge the EPA's findings.

On December 8, 2010, one day after the Emergency Order was issued, the Railroad Commission called a hearing to consider whether Range's operation of the gas wells caused or contributed to the contamination of the water wells. As this proceeding continued, Range informed the EPA that it disputed the validity of the Emergency Order and would not abide by some of its terms. The EPA brought this civil enforcement action on January 18, 2011, seeking injunctive relief and civil penalties against Range for its failure to comply with three of the six requirements of the Emergency Order. Range filed a petition for review of the Emergency Order with the Fifth Circuit Court of Appeals on January 20, 2011 pursuant to 42 U.S.C. § 300j–7(a)(2). Range argued to the Fifth Circuit that Section 1431 would be unconstitutional if it were construed to be a final agency action in this context, and contended that enforcement of the Emergency Order would violate Range's due process rights. The Fifth Circuit's decision is pending.[2]

Despite its objections to the Emergency Order, Range consulted with the EPA and provided the homes whose water wells were contaminated with alternative water and installed explosivity meters, complying with the first three requirements of the

---

**2.** The Fifth Circuit case, entitled, *Range Resources Corporation et al. v. United States En-* *vironmental Protection Agency,* is captioned as Case No. 11–60040.

Emergency Order. Range claims that this was done at the request of the Railroad Commission.[3] Range also hired experts to perform gas, water, soil-gas, and geologic tests, which Range contends demonstrate that Range is not responsible for the contamination of the water wells. Range also deposed John Blevins of the EPA on January 25, 2011, and provides his testimony in which he notes that the EPA could not be certain of Range's role in the contamination of the water wells, and that the EPA did not investigate other possible causes of the contamination. Range alleges that this deposition reveals various ways in which Range was not afforded due process. On January 19 and 20, 2011, the Railroad Commission held its hearings concerning Range's possible role in the contamination of the water wells. On March 22, 2011, the Railroad Commission issued an order in which it determined that Range had not caused and is not causing or contributing to the contamination of the water wells at issue. The Railroad Commission determined that the gas in the water wells was from the Strawn formation, a different source than the source that the Range gas wells were tapping that is closer in depth underground to the Lipsky and Hayley wells. Range claims that the Railroad Commission's preliminary findings are accurate, and that the contamination is due to the Strawn formation, not Range's wells attempting to tap into the Barnett formation.[4]

On January 18, 2011, the EPA filed the instant action, seeking to obtain an injunction forcing Range to comply with the terms of the Emergency Order. Noting that Range had not complied with the fourth, fifth, and sixth requirements of the Emergency Order, the EPA also seeks penalties adding up to $16,500 per day that Range has failed to comply with these terms of the Order under 42 U.S.C. § 300i(b).

### III. Standard of Review

■ Rule 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of a claim. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). A case may be dismissed for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Commc'ns Inc.,* 117 F.3d 900, 904 (5th Cir.1997). The burden of establishing that the district court possesses subject matter jurisdiction rests at all times with the plaintiff. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001).

Rule 12(b)(6) permits dismissal of a cause of action for "failure to state a claim upon which relief may be granted." In considering a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993); *Cross v. Lucius,* 713 F.2d 153, 155 (5th Cir.1983). A motion to dismiss under Rule 12(b)(6) should be granted only if the complaint

---

**3.** At the June 14, 2011 hearing, the parties informed the Court that Range is no longer providing alternative water or explosivity meters to the Lipsky and Hayley residences; however, in this action, the EPA has not asked for an order forcing Range to comply

with these provisions of the Emergency Order.

**4.** At the hearing, the EPA disputed the accuracy of the Railroad Commission's findings and questioned the accuracy of the testing methods used by the Railroad Commission.

does not include "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). However, a complaint will not overcome a Rule 12(b)(6) motion "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV. Analysis

Range argues that enforcement at this time is premature and the controversy is not ripe, and asks the Court to dismiss this case under Rule 12(b)(1). Specifically, Range rejects the EPA's contention that it can recover damages for violations of the Emergency Order when the EPA has not been required to prove that Range actually caused the contamination of the water wells at issue. In the alternative, Range contends that the United States has failed to plead the necessary elements of an enforcement action and has failed to state a claim that is plausible on its face, and asks the Court to dismiss this case under Rule 12(b)(6). These two contentions are intertwined; Range argues that the EPA has failed to plead facts indicating that Range caused the contamination, which it contends would both be insufficient pleading under the Rule 12(b)(6) and unripe because it would not plead that the EPA had

concluded that Range caused the contamination and thus would be subject to dismissal for lack of subject jurisdiction under Rule 12(b)(1).

Range first argues that an enforcement action is premature at this time because there has been no final agency action by the EPA. "Judicial review of federal agency action is governed by the requirement of Section 10(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, which provides that only 'final agency action' is subject to judicial review." *Save Barton Creek Ass'n v. Fed. Highway Admin.*, 950 F.2d 1129, 1132 (5th Cir.1992). Range contends that because the EPA has not pleaded facts indicating that Range caused the contamination, this action cannot be brought because the controversy is not ripe. The EPA contends that to recover civil penalties and enforce the Emergency Order, it does not need to plead that Range actually caused the contamination at issue, but need only plead that Range violated the Emergency Order. In its Complaint, the EPA asks the Court for two types of relief. First, the EPA contends that Range has failed to follow the dictates of the Emergency Order, causing imminent danger to persons. Accordingly, the EPA asks the Court to enforce the Emergency Order to prevent such danger from continuing. Second, the EPA asks the Court to levy statutory penalties against Range for its violation of the Emergency Order.

Range does not challenge the EPA's ability to issue the Emergency Order or other administrative orders. Instead, Range argues that such orders cannot be enforced without requiring the EPA to prove to the Court or another neutral decisionmaker that Range was responsible for the contamination of the Lipsky and Hayley wells. Range claims that the EPA is attempting to obtain substantial civil pen-

alties based on Range's violation of the Emergency Order without having to prove that Range violated any statute, regulation, or other law, or that Range even caused the contamination of the water wells at issue. Range asserts that allowing the EPA to enforce the Emergency Order or to recover penalties for violation of the Emergency Order without pleading or proving of a violation of the law would be a violation of Range's due process rights. The EPA counters Range's assertions by contending that the Emergency Order was issued under emergency circumstances, in which the lack of a pre-deprivation hearing would not violate due process.

■ Upon the "receipt of information" that a contaminant that is present within or likely to enter a drinking water supply which will "present an imminent and substantial endangerment to the health of persons," and that state and local authorities "have not acted to protect the health of such persons," Section 1431(a) provides the EPA with two explicit options: it may either commence a civil action in district court or issue an administrative order. In this case, the EPA took the latter option by issuing the Emergency Order on December 7, 2010, with which Range only partially complied. If the subject of an administrative order does not comply with its terms, Section 1431(b) permits the EPA to file suit in district court to enforce the order and obtain damages for violation of the order. The EPA is not required to bring such an action; instead, it has discretion to determine whether it wants to enforce an administrative order through filing suit in federal court. *See Ross Incineration Servs., Inc. v. Browner,* 118 F.Supp.2d 837, 846–47 (N.D.Ohio 2000). After Range declined to follow three of the terms of the Emergency Order, the EPA filed this action, seeking both injunctive relief and monetary damages.

The EPA's complaint seeks to obtain injunctive relief to enforce the Emergency Order and penalties for Range's failure to follow the Emergency Order. However, the EPA claims that it need only plead facts that demonstrate Range's violation of the Emergency Order, not that Range necessarily caused the contamination of the water wells. Range contends that permitting the EPA to prevail on its claims under this theory would allow for the recovery of damages for violations of an Emergency Order when the EPA has not actually proved that the conditions necessary for issuing the Emergency Order were present at all. Such a result, according to Range, would amount to a deprivation of Range's due process rights.

■ As an initial matter, the EPA argues that Range has not been and will not be deprived of any interest that requires due process protection. Prior to determining whether the procedures at issue are insufficient, the Court must determine whether Range "has been deprived of a protected interest in 'liberty' or 'property.'" *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). The EPA contends that the Emergency Order has not to this point deprived Range of a protected property interest, and that the Emergency Order, if fully enforced, will not deprive Range of any protected interest without due process of law. If Range is ordered to comply with the Emergency Order and is assessed penalties as sought by the EPA in its Complaint, it could be subject to hundreds of thousands of dollars in penalties and would have to undertake costly surveys and inquiries regarding the contaminated water supply. If Range were to be forced to undertake such actions at such great cost or were subject to the penalties contemplated in the Complaint, it would be a deprivation that would impli-

cate Range's due process rights. *See S & H Riggers and Erectors, Inc. v. Occupational Safety & Health Review Comm'n,* 659 F.2d 1273, 1281 (5th Cir.1981) (noting that "civil penalties and substantial compliance costs" implicate due process concerns).

■ Additionally, the Court shall initially address a dispute between the parties over whether the EPA's Emergency Order is a "final agency action" that is ripe for review. There are two conditions of a final agency action; (1) the action must mark the consummation of the agency's decisionmaking process, and not be of a tentative or interlocutory nature, and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow. *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Examples of final agency actions include those that have "direct and appreciable legal consequences"; agency actions that are "purely advisory" and "in no way affect[ ] the legal rights of the relevant actors" are not considered final. *Bennett,* 520 U.S. at 178, 117 S.Ct. 1154.

■ Having considered the parties arguments, it is clear to the Court that as far as "final agency action" is concerned, this dispute is ripe for review. First, the EPA issued the Emergency Order to Range, in which it ordered Range to comply with certain instructions. Because the Emergency Order was issued to Range and seeks Range's compliance, the Court is convinced that the EPA's action is the "consummation of the agency's decisionmaking process." *Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154; *Jobs, Training & Servs., Inc. v. E. Tex. Council of Gov'ts,* 50 F.3d 1318, 1325 (5th Cir.1995) (noting that the characteristics of final agency actions include those that "ha[ve] the force of law and demand[ ] immediate compliance"). Although Range contends that the EPA has not completed its investigation because it is still conducting testing and seeking information, the Court must address the decisionmaking process, not the gathering of additional materials for this or other legal actions. There are no further appeals or inquiries to be made within the administrative process; rather, the only remaining step to be taken is to attempt to enforce the Emergency Order in federal court. *See Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.,* 362 F.3d 333, 337 (5th Cir.2004) (determining that there was no final agency action where there were future "intra-agency" procedures and appeals that were proceeding).

Second, it is clear that legal consequences flow from the EPA's action, since Range may be subject to severe penalties and must follow the instructions of the Emergency Order if the Court grants the relief that the EPA seeks. *Alaska Dept. of Envtl. Conservation v. E.P.A.,* 540 U.S. 461, 481 n. 10, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) (noting that an administrative order imposing new legal obligations on a targeted entity satisfies the finality requirement). The EPA has staked out its position that it need not prove that Range caused or contributed to the contamination of the Lipsky and Hayley wells; instead, it proposes that it has the authority to pursue this enforcement action because there was a possibility of danger to persons under Section 1431, and it had the authority to issue the Emergency Order, which, according to the EPA, has the force of law and Range can be assessed penalties for noncompliance. *See id.* at 483, 124 S.Ct. 983 (upholding the Ninth Circuit's determination that there was a final agency action when the "EPA had 'asserted its final position on the factual circumstances' underpinning the Agency's orders ..., and if EPA's orders survived judicial review, Cominco could not escape the practical and legal consequences (lost costs and vulnera-

bility to penalties) of any ADEC-permitted construction Cominco endeavored"). The EPA's Emergency Order, by which Range could be subject to substantial penalties for noncompliance and would have to undertake significant expense to comply, has the kind of legal and practical effect that is considered to be final agency action. *See F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 243–44, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 152–53, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Accordingly, the Court holds that the EPA's issuance of the Emergency Order is a final agency action that may be reviewed by this Court.

The Court now addresses the procedural due process issue raised by Range. The EPA claims that to enforce the Emergency Order and recover the civil penalties it seeks from Range under Section 1431(b), it need only plead and prove that Range violated the Emergency Order. Range contends that accepting the EPA's theory would mean that Range could be subjected to serious penalties without ever having the opportunity to challenge the EPA's findings before the an administrative judge, this Court, or any other neutral arbiter, thus violating its right to due process. *See, e.g., Sackett v. U.S.E.P.A.*, 622 F.3d 1139, 1144 (9th Cir.2010) (interpreting a Clean Water Act provision as only allowing an award of penalties for violation of a compliance order "only [when] those compliance orders ... are predicated on *actual,* not alleged violations of the CWA, as found be a district court in an enforcement action according to traditional civil evidence rules and burdens of proof"); *Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236, 1258 (11th Cir.2003) (holding that a statute permitting an agency to recover severe penalties by concluding in an administrative order that the TVA had violated the statute without ever actually having to prove (1) whether a violation of the Clean Air Act took place or (2) wheth-

er the factual underpinnings of its conclusion that the TVA was liable were accurate was unconstitutional).

The EPA counters Range's assertion in two ways. First, the EPA claims that this situation is distinguishable from prior cases holding that the EPA must plead and prove its assertions in an enforcement action, *e.g. Employers Ins. of Wausau v. Browner*, 52 F.3d 656, 664 (7th Cir.1995), because, unlike in previous cases that did not involve emergency authority, the EPA acted in an emergency situation involving imminent danger to persons pursuant to its emergency powers. *See Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299–300, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (holding that "summary administrative action may be justified in emergency situations"); *Whitman*, 336 F.3d at 1249, 1258 n. 38 (distinguishing emergency situations from non-emergency situations and observing that penalties for violations of administrative orders issued in emergency situations may be constitutionally permissible). Second, the EPA asserts that the Fifth Circuit's review of the Emergency Order satisfies the requirements of the Due Process Clause of the Fifth Amendment. *See Woods v. Fed. Home Loan Bank Bd.*, 826 F.2d 1400, 1411 (5th Cir.1987) (in seizure of assets case, holding that "a court review of agency action under the arbitrary and capricious standard ... is adequate to assure against the risk of mistaken deprivations"); *but see WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir.2009) ("Where there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, *as long as there is an adequate procedure in place to assess the propriety of the deprivation afterward.*") (emphasis added).

As noted at the hearing, the Court is struggling with the concept that the EPA can enforce the Emergency Order and obtain civil penalties from Range without ever having to prove to this Court, or another neutral arbiter, that Range actually caused the contamination of the Lipsky and Hayley wells, or without ever giving Range the opportunity to contest the EPA's conclusions. That being said, the Court is also impressed by the EPA's response that the statutory scheme that provides for an appeal by Defendants to the Fifth Circuit is sufficient for due process purposes.

■ The Court is of the opinion that this difficult issue, important though it is, need not be resolved at this time. As noted above, the Fifth Circuit is presently considering whether the Emergency Order was issued arbitrarily or capriciously. While Range may be correct that this review is insufficient to satisfy due process, and that compelling the EPA to plead and prove that Range caused or contributed to the contamination of the water wells would satisfy due process, the Fifth Circuit's pending decision may either (1) moot this action by invalidating the Emergency Order, or (2) at least provide the Court with guidance and a framework with which to proceed in this case, as it could provide the Court and the parties with the answer to whether the Fifth Circuit's review sufficiently satisfies due process. Indeed, Range has raised the argument before the Fifth Circuit that the Fifth Circuit's review of the Emergency Order under the arbitrary and capricious standard does not give Range a sufficient opportunity to challenge the EPA's factual allegations, and that the EPA must prove its allegations in an enforcement action in order to obtain the relief it seeks. If the Fifth Circuit accepts this contention, then it would be clear that Range is entitled to an opportunity for a hearing before this Court in this enforcement action to challenge the

factual contentions contained in the Emergency Order. If that is the case, then the Court's course would likely be to allow the EPA to amend the Complaint to comply with the Fifth Circuit's determination that it must plead and prove that Range caused or contributed to the contamination.

Though neither party has asked for it, the Court is of the opinion that instituting a stay of this litigation and deferring to the Fifth Circuit's evaluation of the Emergency Order is the most prudent course to take at this time. The Court has no desire to oversee proceedings about enforcement of the Emergency Order when, some time down the line, the Fifth Circuit may determine that the Emergency Order is not valid because the EPA acted arbitrarily or capriciously. Should this result come about, Range, the federal government, and the Court will have expended enormous efforts and substantial resources for naught. Accordingly, the Court is of the opinion that this case is not ripe for decision at this time; however, the Court shall not dismiss this case. Instead, the Court shall revisit the issue upon the Fifth Circuit's decision, which has the potential to provide the necessary guidance for this litigation. Until that time, the Court shall institute a stay on this litigation. Importantly, drawing upon the information before the Court, the representations of the parties at the June 14, 2011 hearing, and the fact that there has been no petition for a temporary restraining order or a preliminary injunction, it appears clear to the Court that there are no individuals or properties that are in immediate danger and require the Court's immediate intervention. Instituting a stay would therefore not be harmful to any party or nonparty affected by this litigation. Such an action is well within the Court's inherent power to control its docket, *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 348 (5th Cir.2004), which includes

"discretionary authority to handle [a] case in the most efficient way." *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 218 (5th Cir.1998).

The Court does not wish for its decision to stay this action to prejudice either party in this case. Accordingly, the Court shall not award daily civil penalties sought by the EPA for continuing violation of the Emergency Order under Section 1431(b) for any day in which this litigation is subject to the stay provided for in this Order.

### Conclusion

For the reasons stated above, it is OR-DERED that Range's Motion to Dismiss is DENIED WITHOUT PREJUDICE. Furthermore, this litigation is hereby STAYED pending the Fifth Circuit's decision in *Range Resources Corporation et al. v. United States Environmental Protection Agency,* Case No. 11–60040, or further order of the Court.

IT IS SO ORDERED.